## (November 9, 1978)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DANIEL E. BOYER, Appellant.—Appeal from a judgment of the County Court of Albany County, rendered September 22, 1977, upon a verdict convicting defendant of the crimes of burglary in the third degree, and grand larceny in the second degree. At about 4:30 A.M. on June 2, 1977, two police officers in a patrol car noticed defendant standing in the street in front of the premises at 345 Broadway in the City of Albany, calling for a taxi which was about three blocks away. They proceeded slowly past him and, their suspicions being aroused, went around the block and returned to 345 Broadway and

found defendant gone. They then found a window broken in 345 Broadway, and other signs of entry into the building. They then broadcast a description of defendant. The officers began checking the neighborhood for defendant and went into Coulson's News Center on Broadway where they were advised that someone matching defendant's description had been seen getting into a yellow-colored cab. This information was also broadcast. Shortly thereafter, another patrol car saw a cab near the intersection of Madison Avenue and Green Street and they noticed a Black male in the cab who appeared to match the description which had been broadcast. They stopped the cab, and asked him to step out so they could speak to him. Defendant denied that he had been on Broadway, but since he matched the description that had been broadcast, the officers who had made the broadcast were called to the scene. These officers identified him, and he was asked if he would go with them to the detective office. Defendant had a cut on the back of his left hand. They then proceeded to the detective division office where he was advised that they were investigating a burglary, and advised him of his *Miranda* rights. He was asked if he would empty his pockets which he did. Among the articles which were in his pockets were some watches, a set of keys and foreign currency. The officers then obtained a list of the property which was missing from the scene of the burglary which included two stop watches and a set of keys. Two stop watches and the set of keys which had been in defendant's pockets were thereafter identified by the owner as having been reported missing in the burglary. Defendant thereafter admitted his participation in the burglary and signed a confession. Defendant then moved to suppress the confession and the items obtained from defendant's pockets. After the hearing, the motion was denied. Upon the trial, the prosecution introduced into evidence a leather glove with bloodstains found near the scene which defendant had admitted was his, and also a piece of bloodstained glass found at the scene. The jury found defendant guilty of burglary in the third degree, and grand larceny in the second degree. On September 22, 1977, defendant was sentenced to an indeterminate sentence with a minimum of three and one-half years, and a maximum of seven years for each conviction, the sentences to run concurrently. On this appeal, defendant contends that the denial of the motion to suppress constitutes reversible error in that there was no probable cause to initially detain defendant, and the evidence acquired as a result of such illegal detention constituted inadmissible evidence. The temporary detention of defendant for questioning was justified by police officers' reasonable suspicion *(People v Morales,* 42 NY2d 129). Police may approach a person for information where there is some objective credible reason for that interference not necessarily indicative of criminality. The police may exercise a common-law right to inquire upon a founded suspicion that criminal activity is afoot. In such cases, the police are entitled to interfere with the citizen to the extent necessary to gain explanatory information but short of a forcible seizure. Where a police officer entertains a reasonable suspicion that a particular person has committed, is committing, or is about to commit a felony or misdemeanor, CPL 140.50 authorizes a forcible stop and detention of that person. Finally, a police officer may arrest and take into custody a person when he has probable cause. "In evaluating the police action, we must consider whether or not it was justified in its inception and whether or not it was reasonably related in scope to the circumstances which rendered its initiation permissible *(People v Cantor,* 36 NY2d 106, 111) * * * The next degree, the common-law right to inquire, is activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion in that a

842

policeman is entitled to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure *(People v Cantor,* 36 NY2d, at p 114, *supra; People v Rosemond,* 26 NY2d 101; *People v Rivera,* 14 NY2d 441, 446, and authorities cited therein). Where a police officer entertains a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor, the CPL authorizes a forcible stop and detention of that person (CPL 140.50, subd 1; see *Terry v Ohio,* 392 US 1; *People v Cantor, supra)." (People v De Bour,* 40 NY2d 210, 222, 223.) In this case, the police were justified in stopping the taxicab to investigate the suspected burglary. The police officer's testimony that he knew that a burglary had occurred clearly relates to when the apparent burglary was confirmed by the owner of the premises. Knowing that a burglary had apparently taken place and that the taxi passenger met the description of the man originally observed near the burglary location, the officers acted reasonably in stopping the cab and detaining the passenger based upon "the common-law power to inquire for purposes of maintaining the *status quo* until additional confirmation could be acquired". *(People v Dibble,* 59 AD2d 796.) The police were justified in stopping and detaining defendant based upon specific and articulable facts which, taken together with rational inferences from these facts, reasonably warranted the intrusion. The denial of the motion to suppress should be affirmed. At the trial, defendant requested the prosecution to provide copies of the tapes of the police broadcasts. Upon attempting to obtain the copies, it was ascertained that a defect in the tape recording equipment had taken place, and that there was no record of the broadcasts that defendant had requested. Defendant contends that the failure to supply copies of the tapes of the police radio broadcasts requires a new trial. It has been held that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or to punishment, irrespective of the good faith or bad faith of the prosecutor *(Brady v Maryland,* 373 US 83); but here there is no tape recording of the radio call in question—there is no evidence. Defendant does not contend the police were lying when they say there was no tape. Nor does he claim the police destroyed the tape. It is defendant's contention that the negligence which resulted in the failure to tape record the radio call resulted in an injustice to him, and constitutes a denial of due process. The nonexistence of evidence, no matter how useful the evidence might be to the defendant, does not constitute a denial of due process unless the police destroyed the evidence. In the present case, the evidence never existed, there was no tape. In addition, there was no showing that the tapes would do anything more than corroborate the police officers' testimony. Defendant did not offer any support for his claim that the tape would have tended to exculpate him. The absence of the tapes did not amount to a denial of due process and is no basis for a new trial. The other contentions of defendant have been considered and found to be without merit. Judgment affirmed. Sweeney, J. P., Staley, Jr., Main, Larkin and Mikoll, JJ., concur.