OPINION OF THE COURT
Jerome Hornblass, J.
This is a combined Ponder and Mapp hearing to suppress physical evidence, to wit, a gun. The defendants are charged with possession of a weapon, a violation of the *913 Penal Law. The hearing was held on June 24, 1982. The People called as their sole witness Officer James Canberry of the Street Crime Unit.
FACTS
Officer James Canberry testified that he was a nine-year veteran of the police force. Officer Canberry stated he had been assigned to the Street Crime Unit seven and one-half months when the incident occurred.
On December 14, 1981 at approximately 12:15 a.m. Officer Canberry, along with two fellow officers, was on duty in a yellow medallion cab located outside the Dante Bar in the vicinity of 160th Street and Amsterdam Avenue. According to the officer’s testimony, this is a high crime area. At 12:15 a.m. the officer noticed two black males exit the bar. The two males were later identified as the defendants Judge and Keels. The officer testified that defendant Keels then made a motion to his waistband, “an adjustment”.
The defendants then entered a yellow livery cab. The cab proceeded down Amsterdam Avenue toward 158th Street. The officers followed in their cab. In the course of their following the cab, the officers observed from an unobstructed distance of approximately two- to three-car lengths that the defendants continued to turn their heads around looking backward outside the rear window of the cab. According to the officer, he believed that both were looking in the officers’ direction and eye contact was made.
After following for two blocks at 158th Street, the officers pulled astride the cab, showed police identification to the driver and told him to pull over to the side. The driver complied. The police officers exited from their car and asked the cab driver whether everything was alright. The driver’s only response was a shrugging gesture.
Officer Canberry then asked both defendants to step out of the rear of the cab; both exited on the driver’s side, near Officer Canberry. Both men were frisked. The officer then saw a gun lying on the floor of the rear portion of the cab. After recovering the gun, both men were placed under arrest. I find the officer’s testimony credible. The following are the conclusions of law.
*914 I. THE LAW
The case of People v Ponder (54 NY2d 160) abolished the “automatic standing” rule in New York State. Ponder was decided in the wake of United States v Salvucci (448 US 83) and Rawlings v Kentucky (448 US 98) which abolished automatic standing in the Federal courts. The new test to be followed when dealing with possessory crimes is the standard enunciated in the afore-mentioned cases and the earlier cases of Rakas v Illinois (439 US 128) which covered automobile searches on the question of whether the defendant can show a “legitimate expectation of privacy” in the area searched (see Rakas v Illinois, 439 US 128, 148, supra).
The defendants have the burden of establishing that they have standing to contest the allegedly unlawful search. The defendants argue that the hiring of the cab places that area of the cab, where the defendants sat, within the zone of a legitimate expectation of privacy, namely, the area in the back of the cab where the passengers are seated. They also argue that the officers lacked probable cause to stop and frisk the defendants. Defendant Judge also argues, separately, that he has standing by virtue of the automobile statutory presumption of possession statute. (Penal Law, § 265.15, subd 3.)
II. THE STATUTORY POSSESSION ARGUMENT
Subdivision 3 of section 265.15 of the Penal Law is addressed to the trier of fact and the Grand Jury in determining proof of possession. It is an evidentiary presumption which both bodies may consider in evaluating the evidence before it. This evidentiary presumption in no way addresses itself to the Fourth Amendment concerns needed to establish standing. There is no appellate authority for the proposition that it confers a kind of “automatic standing” and this court rejects the nisi prius court’s reasoning in sustaining a determination that standing is conferred by virtue of the statute. The Supreme Court in overruling Jones v United States (362 US 257) has rejected any notion of inconsistency in having the State prove a possessory crime and at the same time have the defendant prove his “legitimate expectation of privacy” under the Fourth Amendment.
*915 III. THE STANDING ISSUE
The defendants state that a legitimate expectation of privacy has been created in the rear of the cab by virtue of the fact that the defendants hired the cab for transportation. The defendants argue that this hiring of. the cab creates a “leasehold interest” in the vehicle, that they had a “possessory interest” in the back seat of the cab by virtue of their exclusive use of the cab during the course of their ride; they believe a legitimate expectation of privacy has been established.
To support this proposition, defendant Judge cites Rios v United States (364 US 253); defendant Keels cites People v Adorno (37 Misc 2d 36, 38) a nisi prius decision by Judge Ringed, which stood for the proposition that a taxicab was like a man’s home “during the period of* * * [the] hire” and that it could not be searched “any more than * * * [a] private automobile.”
As to Adorno, besides being a trial court opinion, this court must keep in mind that Adorno is a pre-Rakas decision and therefore its propositions are of doubtful continuing relevance. Its explicit analogy to a man’s home and a private automobile is erroneous on its face. A plethora of Supreme Court decisions have developed a carefully calibrated sliding scale of privacy interests with a person’s home having a higher degree of protection than his or her automobile. Therefore, we speak of the so-called “automobile exceptions” to the Fourth Amendment (see Carroll v United States, 267 US 132; and, also, Rakas v Illinois, supra).
While it is true the leasing of a vehicle is a form of a possessory interest which can create a legitimate expectation of privacy, a contractual arrangement to use a cab is not a lease. It is “neither a property nor a possessory interest in the automobile, nor an interest in the property seized.” (Rakas v Illinois, 439 US, at p 148, supra.)
Somewhat more problematic is the defendant’s citation of Rios v United States (364 US 253, supra). In Rios, a police officer approached a taxicab in an unmarked car in an area known for narcotics trafficking. Except for the reputation of the area, neither officer knew defendant, nor *916 had the defendant engaged in any criminal activity. As the taxicab stopped at an intersection, the officers followed at a distance. At the intersection the two officers alighted and approached the cab. They identified themselves as officers. In rapid succession, the cab door was opened, the officers grabbed the defendant and the defendant dropped a recognizable quantity of narcotics on the floor. The record is not clear as to whether the narcotics were dropped before or after police entry.
In remanding the case back to the District Court, the Supreme Court stated that under no possible interpretation of the testimony could there be probable cause for a lawful arrest. The government conceded this, but stated it was only an investigatory stop. In a footnote the court noted that “A passenger who lets a package drop to the floor of the taxicab in which he is riding can hardly be said to have ‘abandoned’ it. An occupied taxicab is not to be compared to an open field”. (Rios v United States, supra, p 262, n 6.) The defendant contends this statement of the court evinces a notion that standing is conferred on taxicab passengers.
The problem with this contention of course is that the record reveals that the standing question was not considered by the lower court or the Supreme Court. Furthermore, in a footnote in Rakas, pregnant with meaning, the Supreme Court explicitly rejects the notion that Katz v United States (389 US 347) and Rios expressly recognized a privacy expectation for passengers of taxicabs. The court in its opinion states that “The question of Rios’ right to contest the search was not presented or addressed by the Court and the property seized appears to have belonged to Rios” (emphasis added). (Rakas v Illinois, 439 US 128, 149, n 16, supra.)
Obviously in the case at bar the very issue at stake is the question of expectation of privacy and clearly the defendants have signed no affidavits stating that the seized items belong to them. Therefore, the footnote in Rios is of doubtful precedent in deciding this case.
The defendants in seeking to elevate their standard above “passenger qua passenger” who normally have no legitimate expectation of privacy under Rakas are thus *917 faced with the formidable barrier that the court in Rakas declined to find (as the dissenters wished them to) that the taxicab passengers as passengers, have standing and are not mere passengers. In the face of this rejection of a special status for cab passengers, this court is disinclined to confer such a status on passengers of cabs. This court does not find any precedent, nor have the defendants shown any “legitimate expectation of privacy” in the rear seat portion of the cab. A cab rider has a right, along a public conveyance, to contractually exclude other riders; however this does not amount to a lease in the car and does not elevate his status sufficiently above mere passengers to create a “legitimate expectation of privacy” in the area under the seat of the car.
IV. THE PROBABLE CAUSE QUESTION
For analytic purposes this court will answer the probable cause question separately even though under the Rawlings and Rakas doctrine these inquiries of standing and merits technically “merge into one”. (Rawlings v Kentucky, 448 US 98, 106, supra.) Therefore this court’s alternative holding is that even if this court were to grant standing to the defendants, the defendants would not prevail on the merits.
Even if this court were to rule that there was no probable cause to stop the cab, the defendants would still not prevail, since the defendants cannot vicariously assert the Fourth Amendment rights of the cab driver. It is axiomatic, however, that the defendant has no standing to assert the Fourth Amendment right of another (Alderman v United States, 394 US 165; see, also, People v Ponder, 54 NY2d 160, supra, wherein the Court of Appeals stated that while the police probably violated the Fourth Amendment rights of defendant’s grandmother, the defendant had no grounds for complaint). Their zone of privacy in the rear of the cab does not extend to the front of the cab, nor to the privacy rights of the driver.
However, we must keep in mind under the rule of the Taxi and Limousine Commission a cab driver is required to co-operate with law enforcement officials at all times when he is driving his cab. Quite simply unlike the situation in *918 People v Sobotker (43 NY2d 559) wherein an ordinary car may not be stopped by the police on mere whim or caprice, a cab has a special status under the law. It is a vehicle in a heavily regulated industry with the police being one of the regulatory agencies. Therefore, the police officers were “lawfully present in the automobile, the items seized were in plain view, and their incriminatory nature was readily apparent”. (People v Traynham, 85 AD2d 748, 749.)
Furthermore in People v David L. (56 NY2d 698), the Court of Appeals in reversing the Appellate Division, Second Department (81 AD2d 893), and adopting the opinion of the dissent stated that where a passenger in a car is neither the owner nor operator he could not complain where the car was searched even though there was no independent evidence or indication of criminality or of danger to the officer. Applying a totality of circumstances test the court stated that the expectations of privacy of a passenger of a car are minimal, therefore the opening of the car’s rear door, and the search of his person was not improper.
The Court of Appeals in adopting the dissenting opinion of Judges P. Hopkins and Weinstein in People v David L. (supra) stated that the defendant’s conduct in sliding across the seat and thus exposing the gun in his waistband properly allowed him to be searched, the intrusion being deemed minimal. The defendant’s leaving the gun in plain view beneath the seat of the car amounted to an abandonment since any reasonable expectation of privacy was terminated when he left the gun there. Therefore, any legality involving intrusion upon the defendant’s person did not taint the retrieval of the gun in plain view. (See People v Hogya, 80 AD2d 621; People v Lopez, 22 AD2d 813.)
The motion to suppress the weapon is denied.