OPINION OF THE COURT
Stanley L. Sklar, J.
The principal issue presented in this case is: Can a defendant, who ordinarily, as a mere passenger, lacks standing to contest the validity of a search of a car, seek suppression of guns recovered in a search which followed an arbitrary stop of the car by the police, based on less than reasonable suspicion?
I hold that he can; accordingly, suppression is granted as to all of the defendants.
FACTS
Derek Jones, William Talbert and William Best tried to hire a taxicab during the evening of July 19,1982. Since a taxi was unavailable, their order was referred to another *92 car service, and they accepted a Cadillac limousine, with a chauffeur. The Cadillac which they hired turned out to have tinted rear windows, making it most difficult for persons outside the car to see the occupants in the rear.
Two police officers testified that they stopped the limousine on July 20, 1982 at about 2:15 a.m. on Broadway near 158th Street in Manhattan. They claimed that they stopped the limousine because it passed a red light. However, I do not credit their testimony as to the reason for the stop. Their testimony was hesitant, contained inconsistencies, was lacking in details that one could reasonably expect would have been recalled (but details which, particularly if invented, might have resulted in additional contradictions), was lacking in candor, and appeared tailored to try to meet constitutional standards. In addition, their testimony was directly contradicted by the chauffeur, who gave the impression of being candid and trustworthy. Furthermore, one of the officers admitted to suspicion of the limousine, since crimes, including narcotics activity, had been committed in that area by persons riding in new and expensive cars, and that the limousine was approaching a bar that was known for narcotics activity. Finally, I note that no traffic citation was issued. (Cf. Matter of Robert M., 99 Misc 2d 462.)
Because I do not credit the officers’ testimony as to their reason for stopping the limousine, the People have failed to meet their burden of coming forward on this issue, and it is presumed that the officers acted without reasonable suspicion justifying the stop. (Cf. People v Berrios, 28 NY2d 361.)
After the officers stopped the limousine, they, as a safety measure, had the chauffeur lower the rear windows. One used a flashlight to illuminate the interior and saw a gun in plain view, sticking out of a bag. They ordered the passengers out, and recovered two guns from the bag on the floor of the passenger compartment.
STANDING TO CONTEST THE SEARCH
Beginning in 1978 (Rakas v Illinois, 439 US 128) and continuing in 1980 (United States v Salvucci, 448 US 83), the Supreme Court abandoned the automatic standing rule *93 set forth in Jones v United States (362 US 257). “That rule relieve[d] a defendant charged with a possessory offense of the burden of establishing that he has an interest in the premises searched or the property seized in order to have standing to challenge the search or seizure.” (People v Ponder, 54 NY2d 160, 163.) New York, in the Ponder decision, followed suit.*
The Rakas court held that the defendants, passengers in a car, who asserted “neither a property nor possessory interest in the automobile, nor an interest in the property seized,” failed to demonstrate an expectation of privacy adequate to establish a violation of their Fourth Amendment rights, even though they were legitimately present in that car (Rakas v Illinois, 439 US 128, 148, supra).
While recognizing that searches of cars and homes have traditionally been treated differently in terms of Fourth Amendment expectation of privacy analysis (see, generally, Rakas v Illinois, 439 US 128, 153-154, supra; State v DeMasi, _RI_, _, 419 A2d 285, 294), the defendant passengers in this case claim that Rakas is distinguishable. They urge that because they were riding in a “stretch limousine” with tinted glass and a separate passenger compartment, they had a legitimate expectation of privacy sufficient to pass constitutional muster.
The People, for several reasons, urge that the defendants did not have a sufficient legitimate expectation of privacy. First, the defendants, who ordered a taxicab, may have accepted a limousine merely for its availability or for greater space and comfort. Second, there was no testimony indicating that the defendants ordered a car with tinted glass. This circumstance appears to have been strictly fortuitous. Third, no testimony was presented indicating that there was a partition, tinted or otherwise, between the driver and passenger compartments; or, if there was one, whether it was up or down. Absent a tinted partition that was in place, the interior of the passenger compartment would have been exposed to the view of the chauffeur and of anyone stopping the car and standing next to the chauffeur. Fourth, and most importantly, Fourth Amendment *94 rights should not depend on one’s economic status. A deep-pocketed miscreant in a new limousine with tinted glass should be in no better, or worse, position than a passenger in an ordinary car.
I need not, and therefore do not, decide this issue because I must grant suppression on a narrower ground —- the illegality of the initial investigative stop of the limousine.
STANDING TO CONTEST THE STOP
Rakas does not stand for the proposition that a mere passenger who has no expectation of privacy in the area searched may never seek suppression of the items seized. Rather, the gist of Rakas is that “in order to obtain the benefit of * * * the exclusionary rule, an individual must first demonstrate that his legitimate expectation of privacy in that which was either searched or seized was violated.” (Parkhurst v State, 628 P2d 1369, 1374 [Wyo]; emphasis added; Rakas v Illinois, 439 US 128, 138, supra; United States v Salvucci, 448 US 83, 85, supra.)
Because the legality of the initial stop of the vehicle in Rakas was never challenged (Rakas v Illinois, supra, at p 160, n 5), that court focused primarily on the alleged violation of the defendant’s right with respect to the illegal search. In the instant case, the defendants do not merely challenge the search of the limousine. They challenge the allegedly illegal stop of the limousine as a constitutionally impermissible seizure of their persons (NY Const, art I, § 12; US Const, 4th Arndt) and the subsequent seizure of the weapons as fruit of that illegal seizure (Wong Sun v United States, 371 US 471; see People v Green, 121 MisC 2d 522, 526-527; People v Kunath, 99 111 App 3d 201; 3 LaFave, Search and Seizure, 1984 Pocket Part, § 11.3, pp 232-235; 1 Ringel, Searches & Seizures, Arrests and Confessions, § 11.7, p 11-32.)
A stop by the police of a vehicle on a public highway constitutes a seizure of its occupants within the ambit of the Fourth Amendment. (See Delaware v Prouse, 440 US 648; United States v Brignoni-Ponce, 422 US 873, 878-882; People v John BB., 56 NY2d 482, 487 People v Sobotker, 43 NY2d 559; People v Ingle, 36 NY2d 413.)
*95 This rule, although distinguishable “from the * * * common-law right of inquiry of a pedestrian” (People v Sobotker, 43 NY2d 559, 563, supra), is analogous to the rule in the stop-frisk pedestrian street encounter cases (State v DeMasi,_RI_, 419 A2d 285, supra) that “whenever a police officer accosts an individual and restrains his freedom to walk away, he has ‘seized’ that person” within the meaning of the Fourth Amendment (Terry v Ohio, 392 US 1, 16).
Thus, by analogy, the Supreme Court has recognized that the occupants of a moving vehicle retain a reasonable interest in personal privacy. (See Delaware v Prouse, 440 US 648, 662-663, supra; see, also, People v John BB., 56 NY2d 482, supra; Parkhurst v State, 628 P2d 1369, 1374 [Wyo], supra.)
The reasonableness of the seizure “requires a balancing of the State’s interest in the inquiry at issue against the individual’s interest in being free from [arbitrary] governmental interference.” (People v John BB., 56 NY2d 482, 487, supra; United States v Brignoni-Ponce, 422 US 873, supra; United States v Montgomery, 561 F2d 875, 878; State v DeMasi, supra.) Accordingly, police officers may stop a car on a public highway only when that stop is “conducted pursuant to ‘nonarbitrary, nondiscriminatory, uniform’ highway traffic procedures, or when there is specific cause or, at least, reasonable suspicion that a motorist is about to violate a law.” (People v Sobotker, 43 NY2d 559, 563, supra.)
The New York Court of Appeals cases, particularly Sobotker (supra) and John BB. (supra), do draw a distinction between the illegalities involved in an improper stop of a car and the improper search of a vehicle after a proper stop. But they have not held that a passenger may contest an illegal stop.
Some cases in other jurisdictions have held that a passenger has no standing to object to the illegal stop of a vehicle (Kayes v State, 409 So 2d 1075 [Fla]; State v Ribera, 183 Mont 1; United States v Reyes, 595 F2d 275 [similar holding as to airplane passengers]). Those cases are founded on a broad stroke analysis of Rakas (supra) as simply holding that passengers lack standing to contest *96 government action as to the vehicle. However, as already noted, Rakas involved only standing to contest a search and did not involve standing to contest an illegal stop. To adopt the holding of those cases here would be to destroy the expectation that passengers legitimately share with drivers that they will be free from arbitrary and unreasonable seizures by the government. There is no reason in logic or policy to abandon that well-settled expectation of freedom.
Accordingly, I reject the holding of those cases and, in the instant case, I hold that the initial stop was a constitutionally impermissible seizure.
First, although there is an “automobile exception” to the exclusionary rule, it is a limited exception. “The word ‘automobile’ is not a talisman in whose presence the Fourth Amendment fades away and disappears ” (Coolidge v New Hampshire, 403 US 443,461; see, also, United States v Chadwick, 433 US 1; Arkansas v Sanders, 442 US 753; United States v Ross, 456 US 798; People v Belton, 55 NY2d 49, 55; People v Langen, 60 NY2d 170.) The police did not have probable cause to believe that the limousine contained contraband.
Second, it is clear that we are not dealing with a uniform, nonarbitrary, roving roadblock (see People v John BB., 56 NY2d 482, supra).
Third, the circumstances confronted by the police officers were patently insufficient to give rise to reasonable suspicion that the occupants of the limousine had been, were then, or were about to violate the law.
Although the police officers may have been acting in good faith, it is clear that their actions were based on nothing more than whim, caprice, hunch, suspicion or gut reaction. There was not the slightest objective evidence of criminality. (See People v Cantor, 36 NY2d 106; People v John BB., 56 NY2d 482, 488, supra; People v Sobotker, 43 NY2d 559, 569, supra; United States v Montgomery, 561 F2d 875, 879, supra; State v DeMasi,_RI_,_, 419 A2d 285, 292, supra.)
Further, the presence of a moving limousine on a well-lit, active, major thoroughfare in New York City, in the *97 vicinity of a bar alleged to be patronized by drug traffickers at 2:30 a.m., does not constitute the type of established hallmark of criminality (see, e.g., People v McRay, 51 NY2d 594) giving rise to reasonable suspicion, let alone probable cause. “Constitutionally protected rights are not to be dispensed with * * * solely because the results of the improper search and seizure uncovered the fact that one or all of the persons who were its targets were armed with a deadly weapon. Almost any series of indiscriminate seizures is bound to produce some instances of criminality that might otherwise have gone undetected or unprevented. But were hindsight alone to furnish governing criteria, a vital constitutional safeguard of our personal security would soon be gone.” (People v Sobotker, 43 NY2d 559, 565, supra.)
Fourth, the People’s reliance on the case of People v Judge (117 Misc 2d 912), to legitimatize the stop is misplaced. Judge involved the stopping of a livery cab and the recovery of a gun from the floor of the rear of the cab. The court held that the passengers “cannot vicariously assert the Fourth Amendment rights of the cab driver.” (117 Misc 2d, at p 917.) I am constrained to disagree with my learned colleague. As I held above, passengers can themselves challenge the seizure of their persons that is involved in the stopping of a vehicle.
The People also note that Judge (supra) holds that passengers in the rear of a cab do not have an expectation of privacy because of regulations covering taxicabs which permit a taxi to be searched under circumstances in which an ordinary car cannot be searched. I need not, and do not, reach this claim with, respect to the stopping of the limousine and its subsequent search because there is no claim by the police either that they stopped the limousine knowing that it was a car for hire or that they stopped it in the exercise of regulatory powers respecting taxicabs or other vehicles for hire.
Accordingly, suppression of the guns is granted as to all the defendants.

 See, however, People v Sutton, 91 AD2d 522; People v Taylor, 97 AD2d 381.