176 F.3d 138
 Victor TOWNES, Plaintiff-Appellee-Cross-Appellant,
v.
The CITY OF NEW YORK; Joseph Hamilton; Kenneth J. Donohue;
and Jeffrey Timerman,
Defendants-Appellants-Cross-Appellees.
 Nos. 682, 683, Dockets 98-2259, 98-2309.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 20, 1998.
Decided May 6, 1999.
 
 Dana S. Gershon, New York, N.Y. (Gerald A. Rosenberg, Frances K. Browne, Rosenman & Colin LLP, on the brief), for Plaintiff-Appellee-Cross-Appellant.
 Ronald E. Sternberg, Assistant Corporation Counsel (Michael D. Hess, Corporation Counsel of the City of New York, Leonard Koerner, Assistant Corporation Counsel, on the brief), for Defendants-Appellants-Cross-Appellees.
 Before: NEWMAN and JACOBS, Circuit Judges, and TSOUCALAS, Judge.*
 JACOBS, Circuit Judge:
 
 
 1
 Victor Townes, currently incarcerated for matters not the subject of this case, initiated this 42 U.S.C. § 1983 lawsuit pro se in the United States District Court for the Southern District of New York (Wood, J.), claiming that his constitutional rights were violated by several officers of the New York Police Department--and derivatively by the City of New York ("the City")--during a 1984 police stop of a taxicab in which he was a passenger. After halting the taxicab, the officers ordered Townes out, searched him (finding nothing), searched the taxicab (finding handguns), arrested Townes, and searched him again at the police station (finding cocaine). Townes alleges that he was subjected to an unconstitutional seizure and search that resulted in his spending more than two years in prison on weapons-possession and drug-possession charges.
 
 
 2
 The individual defendants' qualified immunity motion was denied on the ground that Townes had a clearly established right to be free from an unreasonable stop of the taxicab in which he was a passenger. Although we agree that as of 1984, Townes's Fourth Amendment rights were clearly established as to the stop of the taxicab and the seizure of his person when he was ordered out and searched, Townes is not seeking damages for these specific invasions of his privacy, but rather for injuries derivative of these invasions--his arrest, conviction, and incarceration. We conclude that these injuries are not fairly traceable to the actual violations of his civil rights. Therefore, Townes fails to state a claim upon which the relief he seeks can be granted. Accordingly, we reverse.BACKGROUND
 
 
 3
 For purposes of this appeal, we accept as true the factual allegations contained in Townes's complaint. See Boice v. Unisys Corp., 50 F.3d 1145, 1147 (2d Cir.1995). In November 1984, Townes and two other persons were passengers in a livery taxicab en route to Manhattan from the Bronx. The taxicab pulled over after it entered Manhattan, and Townes waited inside while his companions stepped away. Sitting there, Townes noticed several on-duty plainclothes officers of the New York City Police Department watching him from an unmarked police car. He then removed two fully loaded handguns from his person, and hid them, one under the front seat, the other under the passenger seat. After Townes's companions returned, and the three resumed their trip, the officers stopped the taxicab. We assume (as the Appellate Division of the New York Supreme Court later found, and the parties do not dispute) that the taxicab did not violate any traffic law, that the driver did not signal for help, and that the police lacked probable cause to make the stop.
 
 
 4
 The officers identified themselves, ordered the three passengers from the taxicab at gunpoint, and frisked them, but found nothing. The officers proceeded to search the taxicab, and found the two handguns that Townes had hidden. The three passengers were taken into custody and driven to the 32nd Precinct, where they were searched again, at which time cocaine was discovered on Townes's person. Townes was arrested and charged with two counts of criminal possession of a weapon in the third degree and one count of criminal possession of a controlled substance in the seventh degree.
 
 
 5
 Townes's motion to suppress the evidence concerning the handguns and the cocaine was denied (without a hearing), after which he entered a plea of guilty and was jailed. More than two years later, the Appellate Division reversed the conviction on the ground that the police lacked probable cause to stop and search the taxicab. People v. Victor, 149 A.D.2d 363, 540 N.Y.S.2d 670 (1st Dep't 1989). The New York Court of Appeals later remitted the case to the New York Supreme Court for a hearing on the original motion to suppress. People v. Victor, 74 N.Y.2d 874, 547 N.Y.S.2d 831, 547 N.E.2d 86 (1989). Eventually, the indictment was dismissed.
 
 
 6
 Townes commenced the present action in 1994, pleading: (1) claims against each of the individual police officers under 42 U.S.C. § 1983 for violating his Fourth Amendment rights; (2) a § 1983 claim against the City for failing to train or supervise the individual police officers; and (3) a state-law claim against the officers and the City for violating Townes's rights under Article I, section 12 of the New York State Constitution.
 
 
 7
 The defendants moved to dismiss Townes's complaint pursuant to Fed.R.Civ.P. 12(b)(6), arguing that the Fourth Amendment rights Townes asserted were not established with the requisite clarity in 1984, and therefore that the individual defendants were entitled to qualified immunity, and the City could not be held liable for a failure to train or supervise them. The defendants also argued that the state constitutional claim was foreclosed by the statute of limitations for suits against the City and its employees, see N.Y. Gen. Mun. Law §§ 50-i, 50-j (McKinney 1986 & Supp.1998).
 
 
 8
 On September 2, 1997, Magistrate Judge Ellis recommended to Judge Wood that the defendants' motion be granted. Judge Ellis reasoned that although New York caselaw prior to 1978 had clearly and consistently held that the searches and seizures of taxicabs implicated the Fourth Amendment rights of passengers, see, e.g., People v. Boyer, 65 A.D.2d 840, 841-42, 410 N.Y.S.2d 167, 169 (3d Dep't 1978), the Supreme Court's opinion in Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), so unsettled this area of law that by 1984 Townes's asserted Fourth Amendment rights were no longer clearly established, compare People v. Judge, 117 Misc.2d 912, 917-18, 455 N.Y.S.2d 926, 930 (Sup.Ct. N.Y. County 1982) (taxicab passenger lacked standing to challenge stop of taxicab), with People v. Castro, 125 Misc.2d 15, 19-23, 479 N.Y.S.2d 414, 418-20 (Sup.Ct. N.Y. County 1984) (taxicab passenger's Fourth Amendment rights implicated by stop of taxicab). Because the recommended dismissal would eliminate the claims on which federal jurisdiction was predicated, Judge Ellis recommended dismissing the state constitutional claim as well.
 
 
 9
 Judge Wood rejected the Magistrate Judge's recommendation and denied the defendants' motion to dismiss the § 1983 claims. Her March 6, 1998 opinion and order detected no post-Rakas confusion sufficient to call into question the rules that a taxicab stop implicates the Fourth Amendment rights of passengers, see Rios v. United States, 364 U.S. 253, 260-62, 80 S.Ct. 1431, 1435-36, 4 L.Ed.2d 1688 (1960); Katz v. United States, 389 U.S. 347, 352 & n. 12, 88 S.Ct. 507, 511 & n. 12, 19 L.Ed.2d 576 (1967) (citing Rios ), and that such a stop must be justified by reasonable and articulable suspicion, see Terry v. Ohio, 392 U.S. 1, 20-22, 88 S.Ct. 1868, 1879-80, 20 L.Ed.2d 889 (1968); People v. Sobotker, 43 N.Y.2d 559, 563-64, 402 N.Y.S.2d 993, 995-96, 373 N.E.2d 1218 (1978). Judge Wood concluded that the Fourth Amendment rights asserted by Townes were "established with sufficient clarity at the time of ... arrest to survive defendants' motion to dismiss," and denied qualified immunity on the § 1983 claims. However, Judge Wood granted defendants' motion to dismiss the state law claim on the ground that the statute of limitations had run.[1] This appeal follows.
 
 
 10
 Defendants have brought an interlocutory appeal from the denial of their motion to dismiss Townes's § 1983 claims on the ground of qualified immunity, and Townes cross-appeals the dismissal of his state law claim. We have jurisdiction over the order denying qualified immunity, see Golino v. City of New Haven, 950 F.2d 864, 868 (2d Cir.1991), and are exercising our discretion to assert pendent appellate jurisdiction over the closely related issue of whether the complaint adequately stated a claim that the allegedly unlawful stop and search was a proximate cause of the damages the plaintiff seeks for his subsequent incarceration. We decline to exercise pendent appellate jurisdiction over the cross-appeal.
 
 DISCUSSION
 
 11
 * The individual defendants argue that they are immune from suit for their conduct.
 
 
 12
 * Police officers generally enjoy a qualified immunity from liability for their discretionary actions if their conduct does not "violate clearly established rights of which a reasonable person would have known," or if it is "objectively reasonable to believe that [their] acts did not violate these clearly established rights." Soares v. Connecticut, 8 F.3d 917, 920 (2d Cir.1993) (quoting Finnegan v. Fountain, 915 F.2d 817, 823 (2d Cir.1990) (internal quotation marks omitted)) (alteration in original); see also Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Similarly, municipal liability under a failure to train theory requires, in part, that municipal employees violate or are likely to violate a clearly established federal constitutional right. See City of Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989) ("[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."); Walker v. City of New York, 974 F.2d 293, 298 (2d Cir.1992) ("[T]he plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."); Watson v. Sexton, 755 F.Supp. 583, 588 (S.D.N.Y.1991) ("To be 'deliberately indifferent' to rights requires that those rights be clearly established.").
 
 
 13
 In deciding whether a particular right was clearly established as of a particular time, we must determine (i) whether the right at issue was defined with reasonable clarity; (ii) whether the Supreme Court or the Second Circuit had affirmed the existence of the right; and (iii) whether reasonable police officers in the defendants' position would have understood from the existing law that their conduct was unlawful. See Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir.1998); Richardson v. Selsky, 5 F.3d 616, 623-24 (2d Cir.1993) (putting significant weight on whether the law was governed by controlling precedent of this Circuit). Even in the absence of binding precedent, a right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.... [T]he unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).
 
 B
 
 14
 Judge Wood correctly concluded that Townes enjoyed a clearly established right to be free from an unreasonable seizure while a passenger in a taxicab. Although the Supreme Court's decision in Rakas was interpreted by some New York courts as unsettling some of the Fourth Amendment rights of taxicab passengers, see, e.g., Judge, 117 Misc.2d at 914-18, 455 N.Y.S.2d at 928-30, there remained intact the core right of such passengers to be free from the kind of warrantless, suspicionless seizure of the person to which Townes was subjected, compare Berkemer v. McCarty, 468 U.S. 420, 436, 104 S.Ct. 3138, 3148, 82 L.Ed.2d 317 (1984), and Katz, 389 U.S. at 352, 88 S.Ct. at 511, and Rios, 364 U.S. at 260-62, 80 S.Ct. at 1435-36, with Terry, 392 U.S. at 20-22, 88 S.Ct. at 1879-80, and Sobotker, 43 N.Y.2d at 563-64, 402 N.Y.S.2d at 995-96, 373 N.E.2d 1218.
 
 
 15
 We think that Judge Wood's reasoning justifies the conclusion that the individual police officers lack immunity for their stop of the taxicab, and for their seizure and search of Townes at the scene.[2] However, exercising pendent appellate jurisdiction, we proceed to consider the related issue of whether the stop and search were a proximate cause of the damages that the plaintiff is seeking.
 
 C
 
 16
 The only constitutional right that Townes asserts in this constitutional tort action is his Fourth Amendment right to be free of unreasonable search and seizure. Here, the only actionable violations of that right are the stop of the taxicab and the associated seizure and search of Townes's person, which alone might at most support slight or nominal damages. Townes, however, seeks damages not for those injuries, but only for the ultimate harm he suffered by his conviction and incarceration. Neither of the two theories Townes adduces to connect the defendants' conduct to his claimed injury--the fruit of the poisonous tree doctrine (discussed at oral argument), and traditional common law tort principles of causation (pleaded in Townes's complaint)--is sufficient.
 
 II
 
 17
 The fruit of the poisonous tree doctrine cannot link the unreasonable seizure and search to Townes's conviction and incarceration because this evidentiary doctrine is inapplicable to civil § 1983 actions. See Reich v. Minnicus, 886 F.Supp. 674, 681-82 (S.D.Ind.1993).
 
 
 18
 * The fruit of the poisonous tree doctrine is an evidentiary rule that operates in the context of criminal procedure. See Wong Sun v. United States, 371 U.S. 471, 484-88, 83 S.Ct. 407, 415-17, 9 L.Ed.2d 441 (1963); Costello v. United States, 365 U.S. 265, 280, 81 S.Ct. 534, 542, 5 L.Ed.2d 551 (1961) ("[T]he 'fruit of the poisonous tree' doctrine excludes evidence obtained from or as a consequence of lawless official acts ...."); see also Kate E. Bloch, Fifth Amendment Compelled Statements: Modeling the Contours of Their Protected Scope, 17 Wash. U. L.Q. 1603, 1637-38 & nn. 210-11 (1994). The doctrine is an extension of the long-recognized exclusionary rule, see Segura v. United States, 468 U.S. 796, 804, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599 (1984), and as such has generally been held "to apply only in criminal trials." Pennsylvania Bd. of Probation & Parole v. Scott, 524 U.S. 357, 118 S.Ct. 2014, 2020 n. 4, 141 L.Ed.2d 344 (1998). We find no case in which the doctrine has been successfully invoked to support a § 1983 claim, and we see no reason why it could be.
 
 B
 
 19
 The fruit of the poisonous tree doctrine is calculated "to deter future unlawful police conduct" and protect liberty by creating an incentive--avoidance of the suppression of illegally seized evidence--for state actors to respect the constitutional rights of suspects. United States v. Calandra, 414 U.S. 338, 347, 94 S.Ct. 613, 619-20, 38 L.Ed.2d 561 (1974); see United States v. Peltier, 422 U.S. 531, 536-39, 95 S.Ct. 2313, 2317-18, 45 L.Ed.2d 374 (1975). Like the exclusionary rule, the fruit of the poisonous tree doctrine "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." Calandra, 414 U.S. at 348, 94 S.Ct. at 620; see United States v. Janis, 428 U.S. 433, 446-47, 96 S.Ct. 3021, 3028, 49 L.Ed.2d 1046 (1976).
 
 
 20
 "As with any remedial device, the application of the [exclusionary] rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." Calandra, 414 U.S. at 348, 94 S.Ct. at 620. "If ... the exclusionary rule does not result in appreciable deterrence, then, clearly, its use ... is unwarranted." Janis, 428 U.S. at 454, 96 S.Ct. at 3032. The Supreme Court has refused for that reason to extend the exclusionary rule to non-criminal contexts, including civil tax proceedings, see id. at 454 & n. 28, 96 S.Ct. at 3032 & n. 28, habeas proceedings, see Stone v. Powell, 428 U.S. 465, 493, 96 S.Ct. 3037, 3051-52, 49 L.Ed.2d 1067 (1976), grand jury proceedings, see Calandra, 414 U.S. at 349-52, 94 S.Ct. at 620-22, INS deportation proceedings, see INS v. Lopez-Mendoza, 468 U.S. 1032, 1050, 104 S.Ct. 3479, 3489, 82 L.Ed.2d 778 (1984), and parole revocation proceedings, see Scott, 118 S.Ct. at 2020. Here, the deterrence objective has already been achieved (though late) by the rulings of the Appellate Division and Court of Appeals; allowing this and other § 1983 actions to proceed solely on a fruit of the poisonous tree theory of damages would vastly overdeter state actors, see infra Section IV.A, and would distort basic tort concepts of proximate causation.
 
 C
 
 21
 Civil actions brought under § 1983 are analogous to state common law tort actions, serving primarily the tort objective of compensation.[3] See Carey v. Piphus, 435 U.S. 247, 254, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978); see also Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 307, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986) ("Deterrence is also an important purpose of this system, but it operates through the mechanism of damages that are compensatory--damages grounded in determinations of plaintiffs' actual losses."). A § 1983 action, like its state tort analogs, employs the principle of proximate causation. See Gierlinger v. Gleason, 160 F.3d 858, 872 (2d Cir.1998).
 
 
 22
 The fruit of the poisonous tree doctrine, however, disregards traditional causation analysis to serve different objectives. See Wong Sun, 371 U.S. at 487-88, 83 S.Ct. at 417; United States v. Walker, 535 F.2d 896, 898 (5th Cir.1976) ("The Court [in Wong Sun ] specifically rejected a 'but for' or proximate cause test."). To extend the doctrine to § 1983 actions would impermissibly recast the relevant proximate cause inquiry to one of taint and attenuation. See Reich, 886 F.Supp. at 685 ("In this [§ 1983] analysis, ... the operative standard is the tort principle of proximate cause, not the exclusionary rule's principle of taint and attenuation. The two are not identical.").
 
 
 23
 In a § 1983 suit, constitutionally invalid police conduct that by itself causes little or no harm is assessed on ordinary principles of tort causation and entails little or nominal damages. The fruit of the poisonous tree doctrine is not available to elongate the chain of causation.
 
 III
 
 24
 The next inquiry is whether Townes's conviction and incarceration were proximately (or legally) caused by the defendants' constitutional torts. It is arguable that such seizures and searches could foreseeably cause the discovery of inculpatory evidence, but as a matter of law, the unconstitutional seizure and search of Townes's person was not a proximate cause of his conviction because of (at least) one critical circumstance: the trial court's refusal to suppress the evidence, which is an intervening and superseding cause of Townes's conviction.
 
 
 25
 The chain of events in this case is Townes's illegal possession of handguns and cocaine, the stop of the taxicab, the seizure of Townes's person, the search of Townes's person, the search of the taxicab, the discovery of Townes's handguns in the taxicab, Townes's arrest, the search of Townes at the police station, the discovery of cocaine on Townes's person at the police station, the ruling of the trial judge denying suppression of the handguns and cocaine evidence (reversed on appeal some years later on the basis of the fruit of the poisonous tree doctrine), Townes's conviction for offenses he uncontestedly committed,[4] and his imprisonment. Given this chain, it is clear enough that but for the defendants' unreasonable seizure and search, Townes's handguns and cocaine would have gone undetected (at least for the time being), and he would not have been convicted of the precise offenses under these precise circumstances.
 
 
 26
 However, the trial court's failure to suppress the evidence concerning Townes's own criminal acts constituted a superseding cause of Townes's conviction and imprisonment. In the common law, "[a] superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." Restatement (Second) of Torts § 440 (1965).
 
 
 27
 Townes does not plead conduct tantamount to malicious prosecution or false imprisonment. He alleges only a violation of his Fourth Amendment rights via an unreasonable seizure and search. By the time Townes was arraigned and filed his motion to suppress the handguns and cocaine, the defendants' allegedly tortious conduct had long since ended. The state trial court, which alone had the power to suppress the improperly obtained evidence, had control over the ultimate outcome of Townes's case. That court should have recognized that the defendants violated Townes's clearly established Fourth Amendment rights, and should have suppressed the evidence under the fruit of the poisonous tree doctrine, as the Appellate Division later ruled. The state trial court's exercise of independent judgment in deciding not to suppress the evidence, though later ruled to be erroneous, broke the chain of causation for purposes of § 1983 liability for the plaintiff's conviction and incarceration.
 
 
 28
 It is well settled that the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment. See Barts v. Joyner, 865 F.2d 1187, 1195 (11th Cir.1989) (intervening decisions of prosecutor, grand jury, judge, and jury); Hand v. Gary, 838 F.2d 1420, 1427-28 (5th Cir.1988) (magistrate or grand jury); Smiddy v. Varney, 665 F.2d 261, 266-68 (9th Cir.1981) (prosecutor), adhered to, 803 F.2d 1469, 1471-72 (9th Cir.1986); Duncan v. Nelson, 466 F.2d 939, 943 (7th Cir.1972) (sentencing judge). At least that is so in the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment. See Borunda v. Richmond, 885 F.2d 1384, 1390 (9th Cir.1988); Barts, 865 F.2d at 1195; Hand, 838 F.2d at 1428; Smiddy, 665 F.2d at 266-67. There is no claim of such evidence in this case. Therefore, Townes cannot recover damages for his conviction and incarceration from the defendants, and the defendants were entitled to dismissal of Townes's complaint pursuant to Fed.R.Civ.P. 12(b)(6).
 
 IV
 
 29
 Townes is foreclosed from recovery for a second, independent reason: the injury he pleads (a violation of his Fourth Amendment right to be free from unreasonable searches and seizures) does not fit the damages he seeks (compensation for his conviction and incarceration).
 
 
 30
 * The "basic purpose" of § 1983 damages is "to compensate persons for injuries that are caused by the deprivation of constitutional rights." Carey, 435 U.S. at 254, 98 S.Ct. at 1047; Stachura, 477 U.S. at 307, 106 S.Ct. at 2543. The type and amount of such damages "is ordinarily determined according to principles derived from the common law of torts." Stachura, 477 U.S. at 307, 106 S.Ct. at 2542. The common law is an "appropriate starting point for the inquiry under § 1983." Carey, 435 U.S. at 257-58, 98 S.Ct. at 1049. But "[i]t is not clear ... that common-law tort rules of damages will provide a complete solution to the damages issue in every § 1983 case." Id. Thus, "the common law is not an infallible guide for the development of § 1983." Adickes v. S.H. Kress & Co., 398 U.S. 144, 232, 90 S.Ct. 1598, 1641, 26 L.Ed.2d 142 (1970) (Brennan, J., concurring in part and dissenting in part). In cases where common law and § 1983 principles conflict, "the task will be the more difficult one of adapting common-law rules of damages to provide fair compensation for injuries caused by the deprivation of a constitutional right." Carey, 435 U.S. at 258, 98 S.Ct. at 1049.
 
 
 31
 The goal of the Court's § 1983 jurisprudence has been to tailor liability to fit the interests protected by the particular constitutional right in question. See id. at 258-59, 98 S.Ct. at 1049-50. In other words, § 1983 damages should be made available only for risks that are "constitutionally relevant." John C. Jeffries, Jr., Damages for Constitutional Violations: The Relation of Risk to Injury in Constitutional Torts, 75 Va. L.Rev. 1461, 1475 (1989). Here, there is a gross disconnect between the constitutional violations (Townes's Fourth Amendment right to be free from unreasonable searches and seizures) and the injury or harm for which Townes seeks a recovery (his subsequent conviction and incarceration). The evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all.[5]
 
 
 32
 No Fourth Amendment value would be served if Townes, who illegally possessed firearms and narcotics,[6] reaps the financial benefit he seeks. Townes has already reaped an enormous benefit by reason of the illegal seizure and search to which he was subjected: his freedom, achieved by the suppression of evidence obtained in violation of the Fourth Amendment. That benefit to Townes is merely incidental to the purpose of suppression, which is to compel law enforcement compliance with the Fourth Amendment and thereby prevent the invasions of law-abiding citizens' privacy. See United States v. Calandra, 414 U.S. 338, 347, 94 S.Ct. 613, 619-20, 38 L.Ed.2d 561 (1974); see also United States v. Peltier, 422 U.S. 531, 536-39, 95 S.Ct. 2313, 2317-18, 45 L.Ed.2d 374 (1975). Now Townes seeks damages to compensate him for his conviction and time served, on top of the benefit he enjoys as a result of the suppression. That remedy would vastly overdeter police officers and would result in a wealth transfer that "is peculiar, if not perverse." Jeffries, supra, at 1475.
 
 
 33
 We conclude that constitutional tort liability under § 1983 is limited to "the kind of injury that the [constitutional right at issue] was designed to prevent." Id. Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy--including (where appropriate) damages for physical injury, property damage, injury to reputation, etc.; but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution. See id. In this manner, "[t]he penalty for the violation is ... likely to be at least roughly proportionate to the wrong done by the violator." Joseph L. Hoffmann & William J. Stuntz, Habeas After the Revolution, 1993 Sup.Ct. Rev. 65, 87.B
 
 
 34
 Townes seeks compensatory damages relating to his conviction and incarceration, including "damage to his reputation, isolation from society, separation from friends and family, and loss of potential earnings." Because he fails to allege that the defendants' conduct effectively amounted to malicious prosecution, however, those damages are not recoverable. See Heck v. Humphrey, 512 U.S. 477, 484, 114 S.Ct. 2364, 2371, 129 L.Ed.2d 383 (1994) (quoting W. Keeton et al., Prosser and Keeton on Law of Torts § 119, at 887-88 (5th ed.1984)).
 
 
 35
 Under common law, only a "cause of action for malicious prosecution ... permits damages for confinement imposed pursuant to legal process."[7] Heck, 512 U.S. at 484, 114 S.Ct. at 2371. Therefore, a § 1983 plaintiff who does not allege the elements of a common law malicious prosecution claim cannot recover such damages. See id. at 483-87, 114 S.Ct. at 2370-72. Townes's complaint does not allege conduct equivalent to malicious prosecution, only that the individual defendants "acted unreasonably and unlawfully in wrongfully stopping, searching, and arresting plaintiff without a warrant and without probable cause," and that the City's "gross, reckless and deliberate failure ... to properly train and supervise its police officers" was the direct and proximate cause of that "unlawful search, seizure, and arrest." Nor does the complaint allege facts suggesting malicious prosecution. Therefore, Townes cannot recover damages relating to his conviction and incarceration.
 
 
 36
 Neither may Townes recover compensatory damages for his arrest and pre-arraignment detention. As an initial matter, it is unclear from his complaint that he seeks such damages; if he did, he could not recover them. Although the common law tort of false arrest (or false imprisonment) allows plaintiffs to seek damages from "the time of detention up until issuance of process or arraignment, but not more," Keeton et al., supra, § 119, at 888, the existence of probable cause defeats any such claim, see Zanghi v. Village of Old Brookville, 752 F.2d 42, 45 (2d Cir.1985). The individual defendants here lacked probable cause to stop and search Townes, but they certainly had probable cause to arrest him upon discovery of the handguns in the passenger compartment of the taxicab in which he was riding. The lack of probable cause to stop and search does not vitiate the probable cause to arrest, because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant.
 
 
 37
 Ultimately, Townes's only possible damage claim would be limited to the brief invasion of privacy related to the seizure and initial search of his person. Townes's complaint pleads no such damages, and Townes's counsel stated at oral argument that Townes was not seeking damages for this invasion. Therefore, because Townes does not seek the only relief to which he may have been entitled, his complaint should have been dismissed pursuant to Fed.R.Civ.P. 12(b)(6).
 
 CONCLUSION
 
 38
 We reverse the denial of the motion to dismiss Townes's § 1983 claims and remand this case to the district court with directions to dismiss these federal claims. The interlocutory appeal from the immunity ruling does not confer appellate jurisdiction over the dismissal of Townes's state law claim, and we decline to exercise pendent appellate jurisdiction over that claim. We therefore dismiss the cross-appeal.
 
 
 
 *
 The Honorable Nicholas Tsoucalas of the United States Court of International Trade, sitting by designation
 
 
 [1]
 Judge Wood noted that even if Brown v. State, 89 N.Y.2d 172, 188, 652 N.Y.S.2d 223, 232-33, 674 N.E.2d 1129 (1996) (claims may proceed for damages against State of New York for violations of its constitution), could be extended to allow a similar claim against the City, such a claim would be barred by the applicable one year and ninety-day statute of limitations, see N.Y. Gen. Mun. Law §§ 50-i, 50-j (McKinney 1986 & Supp.1998)
 
 
 [2]
 There are two related qualified immunity issues. First, it is an open question whether Townes had a clearly established expectation of privacy in the passenger area of the taxicab in which he was riding. See Rakas, 439 U.S. at 148-50, 99 S.Ct. at 433-34 (Fourth Amendment rights of passenger in private automobile are not infringed by search of owner's vehicle unless passenger has legitimate expectation of privacy in vehicle). But see Judge, 117 Misc.2d at 917-18, 455 N.Y.S.2d at 930 (passenger in taxicab lacked legitimate expectation of privacy, could not vicariously assert driver's Fourth Amendment rights, and forfeited any reasonable expectation of privacy in his weapon by leaving it beneath seat of taxicab). Second, as to Townes's cocaine-possession conviction, we can conclude that Townes had no clearly established right to be free from the post-arrest search of his person at the police station
 However, Townes does not discuss these issues directly. Instead, he implicitly argues that the seizure and initial search of his person tainted or proximately caused the subsequent search of the taxicab and the station-house search of his person. We therefore rely for reversal on both the trial court's failure to suppress the handguns and cocaine (a superseding cause of Townes's conviction and incarceration), see infra Section III, and the insufficient connection between the initial seizure and search of Townes's person and Townes's claimed injury, see infra Section IV.
 
 
 [3]
 Section 1983 actions even borrow statutes of limitations from state tort law. See Ivani Contracting Corp. v. City of New York, 103 F.3d 257, 260 (2d Cir.1997)
 
 
 [4]
 Townes's complaint concedes that upon concluding that the defendants were police officers, he "thereupon secreted two weapons, a .44 Magnum and a 9 millimeter pistol, inside the passenger compartment of the cab." The complaint also states that upon being searched at the 32nd Precinct, "a small tin of cocaine was found allegedly on his person." Townes offers no alternative theory to contest the self-evident conclusion that the firearms and the cocaine were possessed illegally
 
 
 [5]
 It is hardly necessary to say that an unreasonable search cannot lead foreseeably to a criminal conviction unless the victim has in fact committed a crime. See Jeffries, supra, at 1474-75
 
 
 [6]
 See supra note 4
 
 
 [7]
 Some argue that no common-law tort action, not even one alleging malicious prosecution, would allow for recovery of damages relating to a conviction, even after the conviction had been reversed. See Heck, 512 U.S. at 484 nn. 4-5, 114 S.Ct. at 2371 nn. 4-5; see also id. at 495-96, 114 S.Ct. at 2377 (Souter, J., concurring)