■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAYMOND WRAY, Appellant. [640 NYS2d 122]

Viewing the evidence in the light most favorable to the prosecution *(see, People v Contes,* 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence *(see,* CPL 470.15 [5]).

There is no merit to the defendant's contention that the

court erred by conducting the *Wade* hearing after opening statements were made, since the defendant "impliedly consented to the irregular procedure" *(People v Melendez,* 141 AD2d 860, 861; *People v Persaud,* 218 AD2d 756; *see also, People v Orkabi,* 160 AD2d 644; *cf., People v Correa,* 200 AD2d 415). Although the defense counsel had requested a *Wade* hearing prior to trial, he registered no objection to the timing of the hearing when it was commenced. Rather, the defense counsel permitted the court to conduct the entire hearing and then belatedly objected only after the proceedings were completed. By failing to register an objection at a time when the court was in a position to fashion an appropriate remedy, the defense counsel impliedly consented to the timing of the hearing *(see, People v Correa, supra; People v Melendez, supra,* at 861).

In any event, the defendant's claim that he sustained prejudice due to the timing of the hearing is unpersuasive *(see, People v Gonzalez,* 214 AD2d 451; *People v Jones,* 203 AD2d 183). The defendant argues, *inter alia,* that at the *Wade* hearing, one of the prosecution's witnesses was unable to identify him as the perpetrator and that the defense counsel was therefore unable to utilize this testimony in his opening statement. However, the witness's hearing testimony regarding his inability to identify the defendant was repeated in detail at trial and the defense counsel was able to vigorously argue this fact to the jury in summation. Notably, there was nothing in the defense counsel's opening statement which prevented him from later exploiting, to the fullest extent, any weaknesses or inconsistencies which subsequently arose in the People's identification evidence. Under these circumstances, the fact that the defense counsel did not specifically mention the witness's hearing testimony in his opening did not in any way inhibit him from later presenting the most effective theory of misidentification which the evidence would support.

Further, although the court did err in admitting the showup testimony of witness Craig Williams, any error was harmless. Notably, Williams was not only unable to identify the defendant as the perpetrator at trial, he was also unable to testify that the person he viewed during the showup was the defendant.

The court's denial of the defendant's request for a transcript of the *Wade* hearing was not improper, as the defendant's request was untimely *(see, Matter of Eric W.,* 68 NY2d 633).

We have examined the defendant's remaining contentions and find them to be without merit. Thompson, J. P., Copertino and Hart, JJ., concur.

Goldstein, J., dissents and votes to reverse the judgment appealed from, to grant that branch of the defendant's omnibus motion which was to suppress the showup identification of the complainant's companion, and to order a new trial, with the following memorandum: According to the complainant, on November 25, 1990, at around midnight, he and a companion were approached by three men in front of a bar. One of the men held a gun to the complainant's stomach and demanded his coat. The complainant complied, and the perpetrators went into the bar.

The robbery was witnessed by two police officers from the rooftop of a building across the street from the bar. The police officers only saw two men approach the complainant and his companion. One of the officers testified that the gunman passed the gun to his accomplice and went into the bar. The other officer went into the bar and "pulled [the defendant] through the crowd". The complainant's leather coat was found on the floor inside.

Both the complainant and his companion later identified the defendant at the precinct in one-on-one showups. The District Attorney's voluntary disclosure form stated that the identifications occurred at the scene and there were no showups.

Prior to the commencement of the trial, the defense counsel asked for a *Wade* hearing on the admissibility of identification testimony. He claimed that he had not asked for a *Wade* hearing earlier because the voluntary disclosure form "indicates only identification at the scene, nothing about * * * a showup". The application was denied, on the ground that the defendant's former attorney had waived a *Wade* hearing on condition that the People not introduce any evidence of pretrial identifications.

Nonetheless, after the trial had commenced, and the defense counsel had made an opening statement, the trial court conducted a *Wade* hearing. At that hearing, the complainant made an in-court identification of the defendant, but his companion stated that the defendant was not one of the perpetrators. At the conclusion of the *Wade* hearing, which lasted less than two days, the defense counsel contended that "the entire proceeding is invalid in light of the fact that the jury has already been sworn and opening arguments have already been made. * * * I certainly would have not opened in the manner I did had I had some of the testimony that I had at this so-called hearing". The trial court denied that application.

The trial court then ruled on the admissibility of the identification testimony. It suppressed the complainant's

showup identification as unduly suggestive, but ruled that his companion's showup identification, which the District Attorney previously agreed not to admit in evidence, was admissible under CPL 60.25.

Then the defendant moved for a mistrial, on the ground that he would have given a different opening statement if he had known the information elicited at the *Wade* hearing. The trial court denied the application, stating as its reason that the defense counsel "knew full well as we began the case, selected the jury and opened to them * * * that there was a *Wade* hearing in progress", and made no objection. However, the trial record demonstrates that the defendant did in fact raise an objection: he sought a *Wade* hearing prior to jury selection, but his request was denied at that time.

In response to the trial court's charge that he had failed to object to an untimely *Wade* hearing, the defense counsel claimed that the trial court was "misconstruing the facts". The defense counsel noted that "[a]t the time I opened and at the time that this jury was completely selected, you had already made a determination on the record that my *Wade* hearing was denied", but that the morning after opening statements, "the district attorney came up and said to you, Judge, I think maybe just to play it safe we should change our mind", and the trial court acceded to her request. The trial court's only response to the defense counsel's comments was "Fine. The application for mistrial is denied".

The defense counsel then requested a copy of the minutes of the *Wade* hearing and the trial court denied the application as untimely because it was not made "in advance of the hearing".

Pursuant to CPL 710.40 (3), all pretrial motions should be determined prior to trial. In this case, the defendant's delay in demanding a *Wade* hearing is attributable to the error in the District Attorney's voluntary disclosure form, and the defendant clearly preserved his right to a timely *Wade* hearing. At best, the trial court gave the defendant a Hobson's choice: a *Wade* hearing during trial, or no *Wade* hearing at all.

Further, the fact that the *Wade* hearing was conducted after the opening statements clearly prejudiced the defendant's case. When the trial commenced and the defense counsel gave his opening statement, he was under the impression that both showup identifications would not be admitted in evidence, but the trial court ruled after the *Wade* hearing that the complainant's companion's showup identification would be admitted. Further, the testimony of the complainant's companion that the defendant was not one of the perpetrators, which came to

light at the *Wade* hearing, would have added to the strength of the defense counsel's opening argument. Since the defendant was clearly prejudiced by the timing of the hearing *(cf., People v Gonzalez,* 214 AD2d 451; *People v Jones,* 203 AD2d 183), his motion for a mistrial should have been granted.

Moreover, the trial court should have granted the defendant's application for a transcript of the *Wade* hearing. The defendant did not ask for an adjournment of the trial in conjunction with that application *(cf., Matter of Eric W.,* 68 NY2d 633). The police officer who testified at the *Wade* hearing did not give trial testimony until the day after the request for the minutes was made. The defense counsel asked for the minutes of the less-than-two-day hearing, at a time when they still could have been transcribed in time for use in cross-examining the police officer, without any adjournments of the trial. Thus, the defense counsel's brief delay in seeking those minutes should not have resulted in a forfeiture of the defendant's " 'fundamental constitutional right' to a free transcript" of those minutes *(People v Sanders,* 31 NY2d 463, 466, citing *People v West,* 29 NY2d 728, 729).

The People now concede that the complainant's companion's showup identification should have been suppressed. CPL 60.25 authorizes the admission of an out-of-court identification conducted "under circumstances consistent with such rights as an accused person may derive under the constitution of this state or the United States" (CPL 60.25 [1] [a] [ii]), when the witness is "unable * * * to state, on the basis of present recollection, whether or not the defendant is the person in question" (CPL 60.25 [1] [a] [iii]). In this instance, the showup was unduly suggestive, and the eyewitness was *able* to state that the defendant was *not* the person in question. Therefore, the eyewitness's testimony as to the showup was clearly inadmissible *(see, People v Quevas,* 81 NY2d 41).

The People assert that the error in admitting evidence of the showup identification at the trial is harmless, "in light of the overwhelming evidence of defendant's guilt". Under the facts of this case, that claim is unsupportable.

The defendant's conviction was dependent upon identification testimony, which was not corroborated by physical or other evidence. However, the complainant's companion testified at the trial that the defendant did not participate in the robbery. His prior showup identification of the defendant was used to rebut that claim. He testified that he identified the robber, who was wearing a black hat and coat, at the precinct. A police officer confirmed that the individual held at the precinct wearing a black hat and coat was the defendant.

The defendant was identified as a participant by two police officers and the complainant. However, that testimony cannot be characterized as overwhelming evidence. The complainant acknowledged at the trial that he was not sure of the accuracy of his identification. The police officers witnessed the robbery from a rooftop, at a substantial distance. The robbery occurred at night, so all the witnesses had to rely on artificial lighting.

Further, the testimony of the complainant and the police officers contradicted each other. The complainant testified that he was robbed by three men, and the defendant was not the gunman. The police officers testified that the complainant was robbed by two men, and the defendant was the gunman.

Under the totality of the circumstances, the judgment appealed from must be reversed, the showup identification by the complainant's companion suppressed, and a new trial ordered.