05-3341-cv
Wray v. City of New York

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2005

(Argued: February 7, 2006        Decided: June 18, 2007)

Docket No. 05-3341-cv

- - - - - - - - - - - - - - - - - - - -x

RAYMOND WRAY,

Plaintiff-Appellee,

- v.-

CITY OF NEW YORK, DANIEL MARTORANO,
WILLIAM WELLER, JAMES MCCAVERA and
NEW YORK CITY POLICE DEPARTMENT,

Defendants-Appellants.

- - - - - - - - - - - - - - - - - - - -x

Before:        JACOBS, Chief Judge, POOLER, and GIBSON,
               Circuit Judges.*

Interlocutory appeal from an order of the United States
District Court for the Eastern District of New York
(Weinstein, J.) denying motions for summary judgment by
defendants-appellants City of New York and New York City
Police Officer William Weller.

--------------------

* The Honorable John R. Gibson, United States Court of
Appeals for the Eighth Circuit, sitting by designation.

Vacated and Remanded.

ALAN BECKOFF, Assistant Corporation Counsel (Michael A. Cardozo, Corporation Counsel of the City of New York, on the brief; Stephen J. McGrath, Liora Jacobi, of counsel), New York, New York, for Defendants-Appellants.

DAWN M. CARDI (Robert Rosenthal, on the brief), New York, New York, for Plaintiff-Appellee.

DENNIS JACOBS, Chief Judge:

Having prevailed in federal habeas proceedings and avoided retrial on the charge of armed robbery, Raymond Wray brought suit under 42 U.S.C. § 1983 against various parties he deemed responsible for the constitutional violation that led to his conviction. The United States District Court for the Eastern District of New York (Weinstein, J.) granted the defendants summary judgment on all claims but two. In denying summary judgment on those two claims--Wray's claims against Officer William Weller of the New York City Police Department and the City of New York--the district court recited that immediate appellate review of that ruling is desirable because they involve controlling questions of law as to which there is substantial ground for difference of

2

opinion.  Pursuant to 28 U.S.C. § 1292(b), we accepted defendants' interlocutory appeal.

This interlocutory appeal raises two controlling issues of law:  where the admission of testimony at trial regarding a witness identification violated a defendant's right to due process and a fair trial, whether the defendant [i] can establish a § 1983 claim against the officer who conducted the identification procedure; and [ii] can establish a § 1983 "failure to train and supervise" claim against the police department.  We answer both questions in the negative.  The district court's denial of summary judgment is therefore reversed and we remand to the district court with instructions to enter judgment for defendants on Wray's remaining two claims.

**BACKGROUND**

A detailed background of Wray's arrest, prosecution, and conviction is found in our opinion reversing the denial of Wray's habeas petition.  See Wray v. Johnson, 202 F.3d 515, 517-24 (2d Cir. 2000).  We summarize only the facts that bear on the issues presented on this appeal, construing the evidence in the light most favorable to Wray, as the

non-moving party.  <u>Huminski v. Corsones</u>, 396 F.3d 53, 69 (2d Cir. 2005).

Three New York City police officers were conducting a stakeout observation from the roof of a Queens restaurant in November 1990, when they saw a man wearing a long black coat and a hat who was pointing a gun at another man and took his jacket.  The victim and the robber were each accompanied by another man.

Officers William Weller and James McCavera left the rooftop and apprehended on the street the person who was with the robber (Dennis Bailey).  Having learned that the man in the coat and hat had gone inside the restaurant, Officers Weller and McCavera went in, found the stolen jacket, and arrested Raymond Wray, who was wearing a long black coat and a hat.

The victim of the robbery, Melvin Mitchell, and Craig Williams (who accompanied him) were no longer at the scene; but Mitchell was told shortly thereafter by another officer that the robbers had been apprehended and that he should go to the police station.  Within hours of the arrests, Mitchell and Williams went to the station.  According to the police, each was taken to look at Wray, who was in a holding

cell, and each independently confirmed that Wray was the gunman. Williams later testified that he believed the name of the officer who conducted the showup identification "starts with a W. Wellie"--which could reasonably be found to be Officer Weller.

Wray was indicted on multiple counts of first-degree robbery and weapons possession. Bailey pled guilty to one count of criminal possession of a weapon, but went to trial on the robbery and other weapons charges. At the start of his trial in New York Supreme Court, Queens County, in April 1992, the trial court held a Wade hearing on Wray's motion to suppress the stationhouse showup identifications. Mitchell, Williams, and Officer Daniel Martorano (the third officer at the scene) testified as to the identification procedure. After the hearing, the trial court granted Wray's motion to suppress Mitchell's stationhouse identification, but ruled that Williams could testify as to his identification of Wray at the stationhouse.

Williams so testified, and the jury convicted Wray of two counts of first-degree robbery, one count of second-degree criminal possession of a weapon, and one count of third-degree criminal possession of a weapon.

On appeal, the Appellate Division, Second Department, ruled that the trial court had erred in admitting testimony regarding Williams's stationhouse showup identification, because it was the product of unduly suggestive police procedures; but the Appellate Division nonetheless confirmed the conviction on the ground that the error was harmless. People v. Wray, 640 N.Y.S.2d 122 (App. Div. 1996). Leave to appeal to the New York Court of Appeals was denied. People v. Wray, 88 N.Y.2d 1025 (1996).

Wray petitioned for a federal writ of habeas corpus in the Eastern District of New York, arguing that the admission of testimony regarding Williams's showup identification violated his constitutional rights to due process and a fair trial. The district court denied the petition on the ground of harmless error. Wray v. Johnson, No. 96 CV 5139, 1998 U.S. Dist. LEXIS 10625 (E.D.N.Y. June 18, 1998). On February 2, 2000, this Court concluded that the error was not harmless and reversed, granting the petition conditionally unless Wray was retried Wray within 90 days. Wray v. Johnson, 202 F.3d 515 (2d Cir. 2000). The Queens District Attorney's Office declined to retry Wray, and he was released after eight years in prison.

On July 20, 2001, Wray filed this § 1983 action in the Eastern District of New York. His second amended complaint was filed on August 8, 2003 naming as defendants Officers Weller, Martorano, and McCavera, the New York City Police Department, and the City of New York. The complaint alleges violations of the United States Constitution and state law, including denial of due process, false arrest, malicious prosecution, and failure to train and supervise police officers.

On April 14, 2004, defendants moved for summary judgment pursuant to Fed. R. Civ. P. 56, arguing probable cause, qualified immunity, and failure to state a claim. By opinion and order dated October 18, 2004, the district court granted summary judgment to defendants on all but two of Wray's claims, but noted the desirability of an interlocutory appeal of its decisions with respect to the two remaining claims against: [i] Officer Weller for performing an unduly suggestive showup, and [ii] the City of New York for failing to adequately train and supervise its police officers on proper identification procedures. Wray v. City of New York, 340 F. Supp. 2d 291 (E.D.N.Y. 2004).

Both parties sought interlocutory review of the

district court's opinion and order.  On June 30, 2005, this Court denied Wray's motion but granted defendants'.

**DISCUSSION**

We review de novo the district court's denial of summary judgment.  Maxwell v. City of New York, 102 F.3d 664, 667 (2d Cir. 1996).  In doing so, we construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.  Maguire v. Citicorp Retail Servs., Inc., 147 F.3d 232, 235 (2d Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

**A.   The Suggestive Showup Identification**

Wray alleges that Officer Weller violated his constitutional due process and fair trial rights by conducting the unduly suggestive showup identification, and seeks damages under § 1983 for his conviction and incarceration.  Officer Weller argues that he cannot be held

liable for Wray's conviction or incarceration because, even assuming (as we must on summary judgment) that Officer Weller conducted the suggestive showup identification, superseding acts by both the prosecutor and trial judge broke the chain of causation between Weller's conduct and the violation of Wray's constitutional rights.

As we explained when we conditionally granted Wray's habeas petition, we have not held that a suggestive identification alone is a constitutional violation; rather, the constitutional violation is that Wray's right to a fair trial was impaired by the admission of testimony regarding the unreliable identification:

> In the context of an identification following a police procedure that was impermissibly suggestive, the due process focus is principally on the fairness of the trial, rather than on the conduct of the police, for a suggestive procedure "does not itself intrude upon a constitutionally protected interest."

Wray, 202 F.3d at 524 (quoting Manson v. Brathwaite, 432 U.S. 98, 113, n.13 (1977)) (emphasis added); see also Wray, 340 F. Supp. 2d at 302 (explaining that there is no constitutional right not to be subjected to an unconstitutionally suggestive identification). "Suggestive procedures are disapproved 'because they increase the

likelihood of misidentification,' and it is the admission of testimony carrying such a 'likelihood of misidentification which violates a defendant's right to due process.'" Wray, 202 F.3d at 524 (quoting Neil v. Biggers, 409 U.S. 188, 198 (1972)).

The question is whether Wray can establish a claim against Officer Weller for the erroneous admission at trial of testimony regarding the unduly suggestive identification. We agree with the defendants that extending liability to Officer Weller is unprecedented and unwarranted. In the absence of evidence that Officer Weller misled or pressured the prosecution or trial judge, we cannot conclude that his conduct caused the violation of Wray's constitutional rights; rather, the violation was caused by the ill-considered acts and decisions of the prosecutor and trial judge.

*   *   *

Our analysis of constitutional torts--like any other tort--is guided by common-law principles of tort. See, e.g., Malley v. Briggs, 475 U.S. 335, 345 (1986) ("As we stated in Monroe v. Pape, 365 U.S. 167, 187 (1961),

10

[overruled on other grounds by Adarand Constructors v. Pena, 515 U.S. 200, 233 (1995),] § 1983 'should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.' Since the common law recognized the causal link between the submission of a complaint and an ensuing arrest, we read § 1983 as recognizing the same causal link."); Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 216 (2d Cir. 2002) (quoting Palka v. Servicemaster Mgmt. Servs. Corp., 83 N.Y.2d 579 (1994)); Zahrey v. Coffey, 221 F.3d 342, 351 (2d Cir. 2000) (collecting cases); Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999) (same).

Our conclusion follows from our previous holding in Townes, a § 1983 case brought by a plaintiff whose conviction was reversed on the ground that the trial court had erroneously denied a motion to suppress illegally-seized evidence. The plaintiff sued the officers who conducted the illegal search, seeking damages for his conviction and incarceration. We ruled that the officers' conduct violated the plaintiff's right to privacy, but that damages for this violation had not been sought and were likely nominal. We declined, however, to allow recovery against the officers

11

for the conviction and incarceration, holding that the trial judge's decision to admit the evidence constituted a superseding cause.  Townes, 176 F.3d at 147.

The causation alleged by Wray is even more tenuous than the causation alleged in Townes.  In Townes, the officers conducted an illegal search that both [i] was in itself a violation of plaintiff's constitutional rights, and [ii] contributed to the events that led to plaintiff's conviction and incarceration; of these, only the former was deemed a possible claim, albeit for nominal damages (and attorney's fees).  In Wray's case, the alleged conduct of Officer Weller was not in itself illegal or unconstitutional.  The constitutional harm occurred when the showup was impermissibly used to compromise the fairness of Wray's trial--at behest of the prosecutor, by order of the trial court, and beyond Officer Weller's control.

Townes involved a Fourth Amendment claim, but there is no reason to read Townes as so limited.  The holding in Townes rests on the broad principles that [i] "the goal of the Court's § 1983 jurisprudence has been to tailor liability to fit the interests protected by the particular constitutional right in question," and [ii] "§ 1983 damages

12

should be made available only for risks that are constitutionally relevant." Townes, 176 F.3d at 148 (internal quotation marks omitted). See also Zahrey, 221 F.3d at 350-51 (stating that a § 1983 court is concerned with the "legally cognizable result" of misconduct). Wray advocates a distinction between Fourth Amendment violations (which result in a violation of privacy) and the admission of testimony regarding an impermissibly suggestive identification (which may result in unreliable convictions). But that distinction bears only on damages, and particular consequences of a violation (if there is one). Since Officer Weller's conduct was not itself a constitutional violation, there is a "gross disconnect" between the conduct and the injury for which Wray seeks to recover. Townes, 176 F.3d at 148.

Wray also relies on Zahrey, a § 1983 case against an Assistant United States Attorney ("AUSA") who allegedly conspired to fabricate evidence and then used the fabricated evidence to prosecute Zahrey, who was indicted by a grand jury but later acquitted. The district court dismissed the claim. In reversing, we held that Zahrey adequately pled a deprivation of liberty. Although an AUSA enjoys absolute

13

immunity in introducing evidence before the grand jury (regardless of its veracity), the evidence in <u>Zahrey</u> was fabricated in the course of an investigation, as to which that AUSA's immunity was merely qualified.  The absolutely privileged act did not break the chain of causation because, under our line of cases extending liability where the wrongdoer misled or coerced the intervening decision-maker, the AUSA would have been liable even if the fabricated evidence had been adduced by another prosecutor.  <u>Zahrey</u>, 221 F.3d at 353 & n.10 ("It would be a perverse doctrine of tort and constitutional law that would hold liable the fabricator of evidence who hands it to an unsuspecting prosecutor but exonerate[s] the wrongdoer who enlists himself in a scheme to deprive a person of liberty.").

Wray's claim against Officer Weller is readily distinguishable from <u>Zahrey</u> on two sufficient grounds:  [i] Officer Weller's conduct, which later formed the basis of the constitutional deprivation, was not in itself a violation of Wray's constitutional rights; and [ii] the constitutional deprivation was caused by an intervening actor, not by Officer Weller.  <u>See</u> <u>id.</u> at 353-54 (emphasizing that "the same person" committed the initial

wrong and then used the tainted evidence at trial).  Weller testified at Wray's trial, but there is no allegation that Wray misled the persons whose acts effected the constitutional violation.

Wray seizes on language in Zahrey that notes tension in § 1983 jurisprudence between cases, such as our discussion in Townes, in which the chain of causation was broken by the intervening exercise of independent judgment, and cases in which defendants were liable for consequences caused by reasonably foreseeable intervening forces.  The latter cases typically involve situations in which the defendant misled or coerced the intervening decision-maker such that the decision-maker's conduct was tainted; but the Zahrey opinion wondered aloud why such misconduct would be necessary under the doctrine of reasonable foreseeability:

> Even if the intervening decision-maker (such as a prosecutor, grand jury, or judge) is not misled or coerced, it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an "independent" decision that results in a deprivation of liberty.

Zahrey, 221 F.3d at 352.  The court declined to decide that issue because Zahrey involved "the unusual circumstance that the same person took both the initial act of alleged

15

misconduct and the subsequent intervening act," so that the case could be decided "[h]owever the causation issue is to be resolved in the law enforcement context in cases where an initial act of misconduct is followed by the act of a third person." Id. The causation analysis in that case therefore did not reach or decide the causation issues raised by Wray here.

In Zahrey, we posed the question why an "initial wrongdoer" may escape the reasonably foreseeable consequences of his actions. It is always possible that a judge who is not misled or deceived will err; but such an error is not reasonably foreseeable, or (to use the phrase employed in Zahrey, 221 F.3d at 350-51) it is not the "legally cognizable result" of an investigative abuse. Moreover, in the absence of evidence that Officer Weller misled or pressured the prosecution or trial judge, he was not an "initial wrongdoer." Id. at 352. And if his conduct amounted to a wrong under state common law or statutory law, it would still not constitute a violation of a federal constitutional right enforceable under § 1983. We therefore conclude that Officer Weller cannot be held liable under § 1983 for Wray's conviction and incarceration.

16

**B.   Failure to Train and Supervise**

"[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).  The failure to train or supervise city employees may constitute an official policy or custom if the failure amounts to "deliberate indifference" to the rights of those with whom the city employees interact.  City of Canton v. Harris, 489 U.S. 378, 388 (1989).  To establish "deliberate indifference," a plaintiff must show that: [i] a policymaker knows "to a moral certainty" that city employees will confront a particular situation; [ii] the situation either presents the employee with "a difficult choice of the sort that training or supervision will make less difficult" or "there is a history of employees mishandling the situation;" and [3] "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."  Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992).  "[A] policymaker does not

17

exhibit deliberate indifference by failing to train employees for rare or unforeseen events." Id. at 297. Moreover, where (as here), a city has a training program, a plaintiff must--in addition--"identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 129 (2d Cir. 2004) (quoting City of Canton, 489 U.S. at 391).

In light of our conclusion that there was a break in the chain between Officer Weller's alleged conduct and the denial of Wray's constitutional rights, Wray's claim regarding the City's failure to train or supervise its police officers likewise fails for lack of causation. Officer Weller's conduct was not itself the cause of the constitutional deprivation; the City's alleged failure to train him adequately--a step even further removed--cannot, therefore, be the "actual cause" of the constitutional deprivation.

Moreover, Wray has failed to adduce evidence that any failure to train reflected "deliberate indifference" to the rights of others. "Deliberate indifference" involves the

18

conscious disregard of the risk that poorly-trained employees will cause deprivations of clearly established constitutional rights. Amnesty Am., 361 F.3d at 127 n.8. The record evidence establishes that, since 1988, the New York City Police Department has engaged in extensive training on how to conduct identifications. Although Wray posits defects in the Department's testing procedures, Wray has put forth no evidence that these defects are the result of deliberate indifference. See City of Canton, 489 U.S. at 391 ("Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct."). Wray submitted a list of New York cases in which suggestive show-up identification evidence was impermissibly admitted by courts; but only one post-dates 1992--a telling datum when one considers the thousands of identifications conducted by each New York City Police Department precinct each year. The police training thus appears to be largely successful.

**Conclusion**

For the foregoing reasons, we VACATE the judgment of

19

the district court and REMAND the case to the district court with instructions to enter judgment as a matter of law in favor of defendants on the remaining claims.