**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-2918
_____

JEFFREY RICHARDSON; COLBY RICHARDSON,
                                                                 Appellants

v.

NICHOLAS ORIOLO; JAMEL SEMPER, All defendants will be sued
in both their personal capacity as individuals and their official capacity
as officers; 1-100 JANE AND JOHN DOES, et al; STATE OF NEW JERSEY

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:16-cv-00135)
District Judge: Honorable Julien Xavier Neals

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on March 21, 2023

Before: SHWARTZ, BIBAS, and PHIPPS, Circuit Judges

(Opinion filed: March 22, 2023)

_____

---

## OPINION[*]

---

PER CURIAM

Jeffrey and Colby Richardson appeal from the order of the District Court granting summary judgment in favor of the defendants. We will affirm.

### I.

On December 15, 2013, two people were shot at a gas station in Newark, New Jersey. One victim died at the scene, but the other victim (Jennifer Gilbert) survived. Surveillance video captured the shooting and showed that it was committed by two men, though it apparently did not show their faces.

Detective Nicholas Oriolo investigated the shooting and obtained information implicating brothers Jeffrey and Colby Richardson. That information included statements by the victim Gilbert and an eyewitness, Kamika Irby. Both had known the Richardsons for several years, and both identified them as the shooters. On the basis of that and other information, Oriolo prepared an affidavit of probable cause and obtained a warrant for the Richardsons' arrest. Following their arrest, a New Jersey grand jury indicted them on charges of murder and other crimes.

The Richardons then filed pro se the civil action at issue here claiming that their arrest and indictment were wrongful. The District Court stayed the action pending resolution of

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

the criminal charges. The Richardsons ultimately were acquitted of those charges after two trials. Thereafter, the District Court lifted the stay and the Richardsons filed an amended complaint. They asserted three categories of claims that are presently relevant. First, they asserted Fourth Amendment claims of false arrest and malicious prosecution against Oriolo and their prosecutor. Second, they asserted a due process claim against Oriolo based on his employment of an allegedly suggestive photographic identification procedure with the victim Gilbert. Third, they asserted a conspiracy claim against Oriolo and their prosecutor.

The District Court, on defendants' motion, dismissed the Richardsons' claims against their prosecutor on the basis of prosecutorial immunity but allowed their claims against Oriolo and the State to proceed to discovery. Following discovery, those defendants and the Richardsons filed cross motions for summary judgment. The District Court granted defendants' motion, and the Richardsons appeal.[1]

## II.

The Richardsons raise four issues on review. None has merit.

**First**, the Richardsons challenge the procedure that the District Court employed in resolving the parties' cross-motions for summary judgment, whereby the Court granted defendants' motion and then dismissed the Richardsons' motion as "moot." They argue that the District Court should have adjudicated their motion on its merits. But the Court

---

[1] We have jurisdiction under 28 U.S.C. § 1291. "[W]e exercise plenary review over an order resolving cross-motions for summary judgment." Auto-Owners Ins. Co. v. Stevens & Ricci Inc., 835 F.3d 388, 402 (3d Cir. 2016) (quotation marks omitted). "Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id.

effectively did. In granting defendants' motion, the Court expressly addressed arguments that the Richardsons raised only in support of their own motion. (ECF No. 97 at 12 n.5, 18 n.9.) Thus, the Court effectively denied their motion on its merits. Even if it had not, our plenary review reveals that they were not entitled to summary judgment for the reasons explained by the District Court and discussed herein.

**Second**, the Richardsons challenge the entry of judgment for Oriolo on their claims of false arrest and malicious prosecution. In evaluating those claims, the District Court properly explained that they failed if Oriolo had probable cause. See Dempsey v. Bucknell Univ., 834 F.3d 457, 466-67 (3d Cir. 2016). And in evaluating the issue of probable cause, the Court applied the standards and the reconstructed-affidavit procedure that we pre-scribed in Dempsey, 834 F.3d at 467-70. The Court ultimately concluded that no reason-able jury could find a lack of probable cause. We agree.

"[P]robable cause exists if there is a fair probability that the person committed the crime at issue." Id. at 467 (quoting Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000)) (internal quotation marks omitted). In this case, the Richardsons faced a particularly daunting bur-den to establish a lack of probable cause because Oriolo received statements from both the victim Gilbert and the eyewitness Irby, both of whom knew the Richardsons and both of whom identified them as the shooters. Such identifications "usually [are] sufficient to es-tablish probable cause" unless they are "fatally undermined" by exculpatory evidence or evidence of the witness's unreliability. Wilson, 212 F.3d at 790; see also Dempsey, 834 F.3d at 477-78 (explaining "our Circuit's rule" to this effect).

The Richardsons do not rely on any exculpatory evidence. They do not claim, for

4

example, that the surveillance affirmatively exonerates them or that there was any other evidence suggesting that they could not have been the shooters or that others were. Instead, they argue only that Gilbert's and Irby's identifications were unreliable. To prevail on that argument, they must show that the identifications were so unreliable that no reasonable person could have believed them. See Dempsey, 834 F.3d at 467.

The Richardsons have not presented any evidence from which a reasonable jury could draw that conclusion. Their primary argument is that surveillance video "proves" that Gilbert and Irby did not see the shooters because it conflicts with their accounts in various ways.[2] They also argue that Gilbert's and Irby's identifications were unreliable for other reasons.[3]

---

[2] The Richardons argue that: (1) Gilbert said that both shooters shot her, and Irby said that both shot the other victim, though the surveillance shows that the shooters targeted one victim each; (2) Gilbert said that she saw the Richardsons outside a nearby grocery store shortly before the shooting, though the surveillance video that shows them there does not also show her; (3) Irby said that she saw "a lot of people" when she turned toward the scene after hearing the shots, though surveillance did not show "a lot of people" there at the time; and (4) Irby said that, after the shooting, the shooters ran in a different direction than the surveillance shows them running.

We note that, although the Richardsons rely heavily on the surveillance videos, and although the defendants apparently submitted them to the District Court (ECF No. 88-15 at 2), the videos themselves are not on the District Court's electronic docket and the Richardsons have not made them part of the record on appeal. The Richardsons "bore the burden of insuring that all materials on which [they] sought to rely were part of the record on appeal." Horsey v. Mack Trucks, Inc., 882 F.2d 844, 849 (3d Cir. 1989); see also Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (explaining that, with exceptions not relevant here, pro se litigants "must abide by the same rules that apply to all other litigants"). Thus, the Richardsons arguably have forfeited their surveillance-related arguments because "we conduct our [probable cause] analysis based on the evidence reflected in the record itself." Dempsey, 834 F.3d at 471 n.11. Nevertheless, defendants do not appear to dispute the Richardsons' characterizations of the surveillance, and Oriolo had probable cause even taking them at face value.

[3] They argue that: (1) neither Gilbert nor Irby identified them until some 50 days after the

The District Court properly explained that some of these issues were too "trivial" to warrant inclusion in the reconstructed affidavit of probable cause. Wilson, 212 F.3d at 791.[4] But even considering all of them together, they do not undermine the probable cause provided by Gilbert's and Irby's statements. These issues do not "prove," as the Richardsons claim, that neither Gilbert nor Irby could have seen them shoot the victims. At most, these issues constitute reasons for which a jury at a criminal trial might (and, in this case, evidently did) have reasonable doubt. But reasonable doubt does not establish a lack of probable cause. See Zimmerman v. Corbett, 873 F.3d 414, 419 & n.28 (3d Cir. 2017). Probable cause exists so long as the information known to Oriolo raised a "fair probability" that the Richardsons shot the victims. Dempsey, 834 F.3d at 467; see also id. (explaining that "[t]he [probable cause] standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate")

---

shooting; (2) Irby said that she was too far away to make out the (prone) victims, thus suggesting that she was too far away to make out the (standing) shooters; (3) Gilbert did not identify the shooters until Oriolo (a) told her that they were the Richardsons, and (b) showed her only a single photo of the Richardsons (which was disclosed in the affidavit of probable cause); (4) Gilbert was shot from behind and thus may not have seen the shooters; and (5) Gilbert was under the influence of PCP.

[4] For example, the Court properly discounted the Richardsons' arguments that the surveillance videos show that the shooters targeted one victim each and do not show Gilbert with them before the shooting. These purported discrepancies do not undermine Gilbert's and Irby's identifications. The Court also properly discounted the Richardsons' argument that Gilbert was under the influence of PCP. The Richardsons argue that Gilbert must have been under the influence of PCP because (1) Gilbert's sister told Oriolo that she, Gilbert and the other victim "used to smoke PCP together," and (2) the other victim's autopsy showed PCP in his system. These facts do not establish that Gilbert herself was under the influence of PCP at the time, much less that Oriolo knew or should have known as much. In so noting, we do not suggest that our ultimate probable-cause determination would have been different if there were evidence that Gilbert was under the influence of PCP.

6

(quotation marks omitted). The statements of Gilbert and Irby provided a fair probability here,[5] and we agree with the District Court that no reasonable jury could conclude otherwise. See, e.g., id. at 478 (summarizing cases in which "we have held that no reasonable jury could find a lack of probable cause" despite greater reasons to question victim identifications).

**Third**, the Richardsons challenge the entry of summary judgment on their claim that Oriolo deprived them of due process by showing Gilbert photographs only of them, which they claim was a suggestive identification procedure. The District Court entered judgment for Oriolo on this claim because it concluded, given that Gilbert had known the Richardons for several years, that this procedure did not "create[] a substantial risk of misidentification." United States v. Brownlee, 454 F.3d 131, 137 (3d Cir. 2006) (citing Manson v. Brathwaite, 432 U.S. 98, 107 (1977)).

We question whether the Richardsons even stated a claim against Oriolo based on this procedure given that (1) any constitutional violation would have consisted only of the admission of Gilbert's identification at trial, which was the province of the prosecutor and the trial judge, see Wray v. City of N.Y., 490 F.3d 189, 193 (2d Cir. 2007), and (2) the Richardsons were acquitted at trial, thus suggesting that the admission of Gilbert's

---

[5] Although the statements of Gilbert and Irby by themselves established probable cause, those statements were supported by other evidence known to Oriolo at the time. As the Richardsons concede, video surveillance shows them near the scene of the shooting. In addition, Oriolo interviewed Jovannna Hinnant, who told him that she recognized from the surveillance one of "two brothers" who previously had a physical altercation with the victim. Irby likewise told Oriolo that the Richardsons previously had a physical altercation with the victim. The District Court could have included these facts in the reconstructed affidavit of probable cause. See Dempsey, 834 F.3d at 475.

7

identification did not injure them, see Hensley v. Carey, 818 F.2d 646, 648-49 (7th Cir. 1987); see also Goodwin v. Conway, 836 F.3d 321, 329 n.33 (3d Cir. 2016) (citing authority declining to "expand the Brathwaite framework . . . from a rule of evidence to a rule of damages") (quotation marks omitted).  But assuming without deciding that Oriolo's identification procedure was otherwise actionable, we agree with the District Court that the procedure did not create a substantial risk of misidentification given Gilbert's previous acquaintance with the Richardsons.  See United States v. Recendiz, 557 F.3d 511, 526 (7th Cir. 2009); United States v. Dobbs, 449 F.3d 904, 910 (8th Cir. 2006); United States v. Hefferon, 314 F.3d 211, 218 & n.2 (5th Cir. 2002); United States v. Farries, 459 F.2d 1057, 1063 (3d Cir. 1972).

**Fourth**, the Richardsons challenge the entry of judgment on their conspiracy claim against Oriolo.  The Richardsons claim that Oriolo and their prosecutor[6] conspired to wrongfully obtain their indictment.  But as the District Court explained, the existence of probable cause defeats this claim too.  The Richardsons raise some additional arguments directed toward the grand jury proceeding.  They argue, for example, that (1) Oriolo testified that Irby was standing in a somewhat different location than shown by the surveillance, and (2) Oriolo "may" have given the grand jury the impression that the surveillance revealed their faces from a distance.[7]  Like the Richardsons' other arguments, however, these

---

[6] The District Court previously dismissed all claims against the prosecutor himself on immunity grounds.  The Richardsons have not challenged that ruling, and it was correct.

[7] Relatedly, the Richardsons complain that the prosecutor did not show the surveillance videos to the grand jury despite its request to view them.  The grand jurors, of course, would have known that they did not see the actual videos and were fully capable of evaluating the evidence in light of that fact.

arguments do not undermine the probable cause provided by Gilbert's and Irby's statements. Moreover, the Richardsons have not adduced any evidence from which a jury could infer that Oriolo and the prosecutor reached an illicit agreement. See Harvard v. Cesnalis, 973 F.3d 190, 207 (3d Cir. 2020).

### III.

For these reasons, we will affirm the judgment of the District Court.[8]

---

[8] The District Court, in granting defendants' motion for summary judgment, wrote that it "dismissed without prejudice" the Richardsons' claims for false arrest, malicious prosecution and the denial of due process. The Court did not explain that disposition, but we construe its ruling as a judgment on the merits of these claims and we will affirm on that basis.