14-1125-cv
*Bermudez v. City of New York*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2014

(Argued: March 5, 2015          Decided: June 15, 2015)

Docket No. 14-1125-cv

_____

FERNANDO BERMUDEZ,

*Plaintiff-Appellant,*

– v. –

CITY OF NEW YORK, MICHAEL LENTINI, WILLIAM FITZPATRICK, DANIEL MASSANOVA, JOHN MULALLEY, BAKER, (FIRST NAME UNKNOWN), MULCAHY, (FIRST NAME UNKNOWN), VARIOUS JOHN DOES, WHO ARE OR WERE OFFICERS OF THE NEW YORK CITY POLICE DEPARTMENT, INDIVIDUALLY & IN THEIR OFFICIAL CAPACITY, VARIOUS JANE DOES, WHO ARE OR WERE OFFICERS OF THE NEW YORK CITY POLICE DEPARTMENT, INDIVIDUALLY,

*Defendants-Appellees,*

ROBERT M. MORGENTHAU, INDIVIDUALLY & IN HIS OFFICIAL CAPACITY AS FORMER DISTRICT ATTORNEY OF NEW YORK COUNTY, NANCY RYAN, INDIVIDUALLY & IN HER OFFICIAL CAPACITY AS ASSISTANT ATTORNEY OF NEW YORK COUNTY, JAMES RODRIGUEZ, INDIVIDUALLY & IN HIS OFFICIAL CAPACITY AS ASSISTANT ATTORNEY OF NEW YORK COUNTY, ROBIN MCCABE, INDIVIDUALLY & IN HER OFFICIAL CAPACITY AS ASSISTANT ATTORNEY OF NEW YORK COUNTY, MARY C. FARRINGTON, INDIVIDUALLY & IN HER OFFICIAL CAPACITY, HILARY HASSLER, INDIVIDUALLY & IN HER OFFICIAL CAPACITY AS ASSISTANT ATTORNEY OF NEW YORK COUNTY, HERCULANO IZQUIERDO, INDIVIDUALLY & IN HIS OFFICIAL CAPACITY AS ASSISTANT ATTORNEY OF NEW YORK COUNTY,

*Defendants.*[*]

---

[*] The Clerk of Court is respectfully requested to amend the caption as set forth above.

1

Before: CALABRESI, HALL, *Circuit Judges*, RAKOFF, *District Judge*.[#]

Plaintiff Fernando Bermudez was incarcerated 18 years for a murder he did not commit. He was exonerated and released in 2009 after the witnesses who had identified him as the murderer recanted and the Manhattan District Attorney's Office conceded his innocence. He now brings an action under 42 U.S.C. § 1983 and state tort law against the police officers who conducted the investigation. Bermudez argues that the officers violated his due process rights and committed a tort of malicious prosecution by, *inter alia*, using overly suggestive witness identification procedures and coercing witnesses to identify Bermudez. The District Court granted summary judgment to the Defendant officers, and Bermudez appeals. We conclude 1) that there are genuine issues of material fact concerning Bermudez's due process claims, and 2) that there are no genuine issues of material fact concerning Bermudez's malicious prosecution claims. We therefore AFFIRM the judgment of the District Court in part, VACATE the judgment of the District Court in part, and REMAND for further proceedings consistent with this opinion.

BRIAN J. ISAAC, Pollack, Pollack, Isaac, & De Cicco, LLP, New York, NY, *for Plaintiff-Appellant*

PATRICIA A. BAILEY, New York County District Attorney's Office, New York, NY, *for Defendants*

KAREN GRIFFIN, New York City Law Department, New York, NY, *for Defendants-Appellees*

CALABRESI, *Circuit Judge*:

## I.    BACKGROUND

Plaintiff Fernando Bermudez was incarcerated 18 years for a murder he did not commit. The crime in question took place around 3:00 AM on August 4, 1991. A 16-year-old boy named Efraim Lopez was at a party at the Marc Ballroom in Manhattan, and was punched in the face by a man named Raymond Blount. Lopez told another individual about this altercation with Blount, and the parties in the case before us do not dispute that this

---

[#] Hon. Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

other individual subsequently shot and killed Blount. Moreover, the parties before us no longer dispute that this other individual was not Bermudez.

Detectives Michael Lentini and William Fitzpatrick were assigned to the case, and later on August 4 they brought seven witnesses in for questioning – Nkosi Boyce, Lawrence Darden, Terrence Hall, Okpa Iyesi, Frank Kent, Michael Thompson, and Jaime Velasquez. The detectives asked this group of witnesses collectively to describe the shooter. The witnesses said he was a 16-to-26-year-old Hispanic man approximately 5'11" and weighing around 165 pounds. Detective Lentini then brought the witnesses several drawers' worth of photographs of prior arrestees that matched this description.[1] The witnesses went through the photographs together while engaging in conversation with each other. At one point, Velasquez took a photograph of Bermudez out of one of the drawers and showed this photograph to several other witnesses, remarking that Bermudez looked cute. Velasquez gave the photograph of Bermudez to Detective Lentini, and the police officers immediately ended the procedure despite the fact that the witnesses had not yet looked through all of the photographs.

Later that evening, Detective Daniel Massanova made a six-photograph array, which included Bermudez's picture. He showed the array to the witnesses, and told them "I want you to look at these six photos here in front of you and to decide which one you think is responsible." Joint App'x at 699. Thompson then identified Bermudez as the shooter, Hall and Iyesi stated that Bermudez was at the scene, Darden and Boyce did not identify anyone

---

[1] These facts about the photograph selection procedure and the photograph array viewing are drawn from Justice John Cataldo's findings of fact in the 2009 New York State case in which Bermudez was exonerated. *People v. Bermudez*, 906 N.Y.S.2d 774 (N.Y. Sup. Ct., Nov. 9, 2009).

3

as the shooter, and Kent identified Bermudez as "the kid with the gold chain who reached behind his back for a gun." Joint App'x at 86.9-.10.

The next day the police conducted a lineup that included Bermudez. At the lineup, Velasquez, Thompson, Kent, and Iyesi all identified Bermudez. The remaining three witnesses stated that they did not recognize anyone in the lineup.

The police also brought Lopez – the 16-year-old whose punching was the cause of Blount's shooting – into custody, gave him *Miranda* warnings, and questioned him about the shooting. In the course of his long interrogation, Lopez gave three inconsistent written statements to the police. In the first statement, Lopez did not admit to knowing the shooter's name, but described the shooter as 6'0" and 180 pounds, wearing a white shirt with black designs, beige shorts, and a chain with a gold medallion. In the second written statement, Lopez indicated that he knew the shooter and that the shooter's street name was "Wool Lou." In the third statement, Lopez said that Wool Lou was the individual in "photograph 2" (the photograph of Bermudez), and that he knew Wool Lou from the neighborhood and from seeing him at the building where Lopez's grandmother lived.

Subsequently, after Lopez had been in custody for a total of around 30 hours, Assistant District Attorney James Rodriguez and Detective Massanova questioned Lopez and took a videotaped statement. In that statement Lopez a) indicated that the shooter was named "Lou" and had the nickname "Wool Lou," and b) identified Bermudez, from his photograph, as "Wool Lou." Lopez further said that he did not recognize the nickname "Most" (which was known to be Bermudez's nickname). Crucially, as it will turn out, during the videotaped interrogation, Detective Massanova told ADA Rodriguez that at the

4

original interrogation Lopez had voluntarily pointed to Bermudez's photograph before Massanova even opened up the photo array.

In two later affidavits given in 1992 and 1993, which were produced in connection with Bermudez's post-trial collateral challenges to his conviction, Lopez, however, gave a very different account of Detective Massanova's original interrogation. According to these affidavits, Detective Massanova gave Lopez a photograph of Bermudez, told him that Bermudez was a drug dealer, and said to Lopez that if he did not identify Bermudez as the person who had killed Blount then Lopez would be charged as the shooter.

On August 6, 1991 Bermudez was arrested, and Detective Massanova and ADA Rodriguez conducted a videotaped interrogation. Bermudez denied any involvement in the shooting and also denied that he had been at the Marc Ballroom on the night of the shooting. He said that on that night he was driving around in his father's car looking for girls and stopping to eat at restaurants. Several of Bermudez's friends also went to the precinct and gave videotaped statements that they had been with him the evening of August 3, and that they had not been at or near the Marc Ballroom.

ADA Rodriguez interviewed everyone who had viewed the lineup, including those who did not identify Bermudez. According to Rodriguez's later testimony at a federal habeas corpus hearing, Velasquez said that she saw Bermudez inside the Ballroom before the shooting, and that she saw him reach behind his back for a gun before she heard a gunshot. The ADA also testified at the habeas hearing that Thompson said that he saw Bermudez shoot Blount. After interviewing the witnesses, ADA Rodriguez presented murder charges against Bermudez to a grand jury, using Velasquez and Thompson as witnesses. Bermudez was indicted and brought to trial. The prosecution's evidence at trial

5

included testimony from Lopez, Velasquez, Thompson, Kent, and Iyesi. Based on this evidence, the jury convicted Bermudez.

After the verdict but before sentencing, a private investigator hired by Bermudez's family notified Detective Massanova that Lopez had a friend by the name of Luis Munoz who went by the name of "Wool Lou," and that Munoz had recently left the state of New York. Detective Massanova informed ADA Rodriguez of this fact. The sole inquiry Rodriguez made was to obtain a copy of Munoz's criminal history. After the conviction, Bermudez moved to set aside the verdict due to the newly discovered evidence that Luis Munoz was the real shooter. The judge denied this request, and on September 18, 1992, sentenced Bermudez to a term of 23 years to life in prison.

Over the next few years Bermudez brought four different motions in state court, under New York Crim. Proc. Law § 440.10, seeking relief from his conviction. These motions were denied. Notably, in connection with these motions the five principal trial witnesses – Lopez, Velasquez, Thompson, Kent, and Iyesi – all recanted their previous testimony and proffered affidavits stating that they did not believe Bermudez was the shooter.

On June 28, 2000, Bermudez filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of New York, claiming that his conviction was based on perjured testimony and that his due process rights were violated by impermissibly suggestive identification procedures. Magistrate Judge Kevin N. Fox held a hearing at which the trial witnesses, Detective Massanova, Detective Lentini, ADA Rodriguez, and the trial judge all testified. Magistrate Judge Fox found that the photograph identification procedures were "impermissibly suggestive and conducive to irreparable

6

misidentification." *Bermudez v. Portuondo*, No. 00-4795, 2004 U.S. Dist. LEXIS 5427, at *102 (S.D.N.Y. Mar. 29, 2004).

He also found, however, that Bermudez could not establish a due process violation. The Magistrate Judge concluded this based on the witnesses' detailed testimony at trial that they had seen Bermudez, on Lopez's testimony about personally knowing Bermudez, and on his own determination that the witnesses were not credible both when they said their testimony had been coerced and when they sought to recant that testimony.

District Court Judge Loretta Preska adopted Magistrate Judge Fox's report and recommendation in its entirety. Both the District Court and the Second Circuit denied Bermudez's motions for a certificate of appealability.

In October 2008, Bermudez filed another motion in state court under New York Crim. Proc. Law § 440.10 to vacate his conviction. The motion was heard by New York State Supreme Court Justice John Cataldo. In connection with this motion, the Manhattan District Attorney's Office conceded not only that Lopez had testified falsely when he identified Bermudez as "Wool Lou" at trial, but also that Luis Munoz was the real "Wool Lou." Justice Cataldo thereupon found that Bermudez was innocent, and that relief was warranted. *People v. Bermudez*, 906 N.Y.S.2d 774 (N.Y. Sup. Ct., Nov. 9, 2009).

Justice Cataldo additionally found that there had been a strong factual basis for the mistaken identification because Bermudez and Munoz looked alike, and that the post-trial recantations of Kent, Iyesi, Velasquez, and Thompson were all credible. Moreover, the Justice concluded that the photograph identification procedures were impermissibly suggestive based on the following facts: 1) that a joint description of the shooter was initially obtained from all of the witnesses together, 2) that Velasquez, who picked the photograph of

7

Bermudez out of the police files, showed that photograph to the other witnesses and the witnesses discussed it, 3) that the detectives immediately ended the viewing procedure after Velasquez handed them the photograph of Bermudez, 4) that Detective Massanova instructed the witnesses viewing the photo array that they should "decide which one you think is responsible," and 5) that the witnesses were shown Bermudez only a) in a photograph and b) seated in a lineup, which prevented them from seeing his actual size. Justice Cataldo vacated the judgment of conviction, and Bermudez was released.

Bermudez subsequently brought this action for damages under 42 U.S.C. § 1983 and state common law. The District Court (Preska, *C.J.*) granted Defendant police officers' motion for summary judgment. Bermudez appeals.

## II.    DISCUSSION

We review a grant of summary judgment *de novo*. *Amerex Grp., Inc. v. Lexington Ins. Co.*, 678 F.3d 193, 199 (2d Cir. 2012). On appeal, the non-moving party must show that there is a genuine dispute as to material facts. *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). "To defeat summary judgment . . . non-moving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts' and they 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (citations omitted).

**A. There are genuine issues of material fact concerning violations of due process**

Bermudez asserts a number of due process claims against the investigating police officers under 42 U.S.C. § 1983, alleging that they used unconstitutionally suggestive

8

identification procedures and that they coerced witnesses.[2] The District Court found that no due process claim could be maintained against the officers because the prosecutor's independent decision to bring charges was an intervening cause that cut off liability. Thus, according to the District Court, even if Defendant police officers coerced witnesses and used improper identification procedures, these actions did not proximately cause the loss of Bermudez's due process rights because ADA Rodriguez separately decided to use the evidence at trial.

In so finding, the District Court relied on this Court's decisions in *Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999) and *Wray v. City of New York*, 490 F.3d 189 (2d Cir. 2007). In *Townes* the plaintiff brought a § 1983 action against an officer who had performed an unlawful search of the plaintiff and of the vehicle in which he was riding. This Court found that the officer's search – even if illegal – was not a proximate cause of the plaintiff's conviction and incarceration because the trial court's independent refusal to suppress the evidence constituted a superseding cause. *Townes*, 176 F.3d at 146. Similarly, in *Wray* the plaintiff brought a § 1983 claim against an officer who had conducted an unduly suggestive lineup. This Court found that since there was no evidence that the officer "misled or pressured the prosecution or trial judge," the prosecutor's subsequent decision to enter the lineup into evidence and the judge's decision to permit it as evidence constituted superseding causes which let the officer off the hook. *Wray*, 490 F.3d at 193. Based on these

---

[2] Defendants assert on appeal that Bermudez is collaterally estopped from arguing that the witnesses were coerced, because this testimony was not found credible in the prior federal habeas proceeding. But "collateral estoppel is an equitable doctrine – not a matter of absolute right. Its invocation is influenced by considerations of fairness in the individual case." *PenneCom B.V. v. Merrill Lynch & Co., Inc.*, 372 F.3d 488, 493 (2d Cir. 2004). Given the context and history of this case, in particular that the government conceded Bermudez's innocence *after* the federal habeas proceeding to which it seeks to have us give preclusive effect, we conclude that applying issue preclusion would be inequitable and decline to do so.

holdings, the District Court concluded that ADA Rodriguez's decision to introduce the questionable witness evidence at trial was a superseding cause of the harm resulting from the alleged due process violations committed by the officers.

Bermudez contends, however, that summary judgment should not have been granted on the ground that ADA Rodriguez's decision to prosecute was a superseding cause of the harm Bermudez suffered. Bermudez asserts that there are triable issues of fact as to whether ADA Rodriguez was misled into thinking that the witness identifications had been legitimately procured. And Defendants can be held liable for violating Bermudez's due process rights if they "misled or coerced the intervening decision-maker such that the decision-maker's conduct was tainted." *Wray*, 490 F.3d at 195; *accord Townes*, 176 F.3d at 147.

Moreover, if the ADA was simply not informed of the alleged problems with the evidence, then he could not be a superseding cause of the deprivation of Bermudez's due process rights. *See Myers v. County of Orange*, 157 F.3d 66, 73-74 (2d Cir. 1998) (holding that a prosecutor's exercise of independent judgment was not a superseding cause where the prosecutor was constrained by the police department's failure to investigate certain claims). And if the ADA's decision to prosecute Bermudez is not a superseding cause, then a jury could find that Defendants' procedures for producing witness evidence proximately caused the alleged rights violations. *Cf. Zahrey v. Coffey*, 221 F.3d 342, 357 (2d Cir. 2000) (noting the existence of a "right not to be deprived of liberty as a result of *any government officer's* fabrication of evidence"). As a result, even if it is undisputed that ADA Rodriguez independently decided to present the witness evidence at trial, Bermudez can still pursue a

claim against the investigating officers for depriving him of due process rights if the ADA was not informed of constitutional errors in how the witness evidence was obtained.

Bermudez makes two factual arguments in support of his claim. First, he contends that ADA Rodriguez was never informed about the unduly suggestive procedures that were used during the photograph identification and array. Second, he points to a discrepancy between Lopez's affidavits seeking to exonerate Bermudez and a statement Detective Massanova made to ADA Rodriguez at the time that the ADA first questioned Lopez. Lopez asserted in his "exonerating" affidavits that he had been coerced into identifying Bermudez with a threat of prosecution. But, during Lopez's earlier videotaped statement taken by Massanova and Rodriguez, Massanova tells Rodriguez that Lopez had identified Bermudez quickly and voluntarily. In particular, Massanova says that Lopez had "indicated [Bermudez's photo] before I opened [the photo array] up." Joint App'x at 894-95. This, Bermudez argues, would allow a jury to conclude that ADA Rodriguez was misled by Detective Massanova into believing Bermudez was guilty, and that the ADA decided to proceed on that basis.

The District Court determined that ADA Rodriguez could not have been misled, because he participated in the investigation. The Court noted that Rodriguez interviewed all of the witnesses who had viewed the lineup, that several of these witnesses divulged doubts about Bermudez being the shooter, and that ADA Rodriguez nonetheless brought the case to the grand jury and to trial. We believe, however, that a reasonable jury could still find that ADA Rodriguez's decision to prosecute Bermudez could have been proximately caused by the officers' conduct.

11

ADA Rodriguez was not present at the photo array viewing, nor was he present when Detective Massanova originally interrogated Lopez. If the ADA took as true what Massanova told him about Lopez's early and supposedly totally voluntary identification, he might have been led to conclude, incorrectly, that any defects in the witnesses' identifications were minor matters and for that reason could be ignored.

Moreover, it is also possible that ADA Rodriguez was misled about this evidence in another way that was not cured by his own subsequent interrogation of the witnesses. Once the witnesses had adopted a story – either because of a suggestive presentation of photographs or because of more overt coercion by the officers – they might very well have decided to stick with that story (or become convinced that it was true), and for that reason have misinformed the ADA when he subsequently questioned them. *See, e.g.*, Maria S. Zaragoza, Robert F. Belli, & Kristie E. Payment, *Misinformation Effects and the Suggestibility of Eyewitness Memory,* in DO JUSTICE AND LET THE SKY FALL: ELIZABETH F. LOFTUS AND HER CONTRIBUTIONS TO SCIENCE, LAW, AND ACADEMIC FREEDOM (Garry & Hayne eds., 2006) (reviewing numerous empirical studies showing that suggestive forensic interview practices create a "misinformation effect" whereby witnesses report remembering events that they never saw).

Accordingly, we conclude that a jury could find that Defendants' alleged failure to inform ADA Rodriguez about problems in the initial questioning of these witnesses could have prevented ADA Rodriguez from making an informed decision about the reliability of

that evidence.[3] And this would mean that a jury could find that Defendants remained a proximate cause of the deprivation of Bermudez's due process rights.[4]

In sum, there are triable issues of fact concerning whether ADA Rodriguez's decision to bring charges was tainted by misleading information about how the witnesses originally came to identify Bermudez as the shooter. It was therefore error to grant summary judgment to Defendants on Bermudez's due process claims.[5]

**B. There are no genuine issues of material fact concerning malicious prosecution**

Bermudez also asserts a malicious prosecution claim under New York law against the investigating officers. Bermudez must satisfy four elements to succeed on this claim: 1)

---

[3] Bermudez also challenges the District Court's holding that Defendants are nevertheless entitled to qualified immunity. For the reasons discussed above, we find that there are genuine issues of material fact as to whether an officer of reasonable competence could have believed that the manner in which the photo array, lineup, and interrogation of Lopez were conducted did not violate Bermudez's rights. *See Weaver v. Brenner*, 40 F.3d 527, 537 (2d Cir. 1994) ("Review of this record leads us to conclude that there are genuine issues of material fact as to whether defendants engaged in the alleged coercive conduct. Since defendants hotly dispute plaintiff's allegations, a factual determination of their conduct is needed to resolve the issue of qualified immunity."). *Cf. Higazy v. Templeton*, 505 F.3d 161, 177-78 (2d Cir. 2007). Accordingly, we reverse the District Court's grant of qualified immunity to Defendants.

[4] Bermudez additionally brings a due process claim under *Brady v. Maryland*, 373 U.S. 83 (1963), arguing that Defendant police officers misled ADA Rodriguez as to the nature of the photo identification procedures and the fact that Lopez's testimony was coerced. Bermudez contends that these facts should have been disclosed to him. Police officers can be held liable for *Brady* due process violations under § 1983 if they withhold exculpatory evidence from prosecutors. *Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir. 1992). Thus the same disputed issues of material fact exist concerning Bermudez's *Brady* claim. If the prosecutor was not informed about this evidence, then Defendant officers could be found to have been a proximate cause of these asserted due process violations as well.

[5] Defendants appear to argue that Bermudez's due process claims fail because there was probable cause to bring an indictment. But the absence of probable cause is not an element of a due process claim. *See Poventud v. City of New York*, 750 F.3d 121, 134 (2d Cir. 2014) (en banc) (distinguishing the elements of malicious prosecution from those of other due process claims); *Alexander v. McKinney*, 692 F.3d 553, 556-57 (7th Cir. 2012) (listing the elements of a malicious prosecution claim and the elements of a due process claim under *Brady*, and naming lack of probable cause as a requirement only of the former).

that Defendants either commenced or continued a criminal proceeding against him, 2) that the proceeding terminated in his favor, 3) that there was no probable cause for the criminal proceeding, and 4) that the criminal proceeding was instituted with actual malice. *Russo v. New York*, 672 F.2d 1014, 1018 (2d Cir. 1982). While police officers do not generally "commence or continue" criminal proceedings against defendants, a claim for malicious prosecution can still be maintained against a police officer if the officer is found to "play[] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010) (quoting *Rohman v. New York City Transit Authority*, 215 F.3d 208, 217 (2d Cir. 2000)). This element might be satisfied by, for example, showing that an officer generated witness statements or was regularly in touch with the prosecutor regarding the case. *Id.*

Bermudez's claim for malicious prosecution fails at the summary judgment stage, because no facts in dispute support a lack of probable cause to charge him with the relevant crime. Where, as here, a grand jury indicted the plaintiff on the relevant criminal charge, New York law creates a presumption of probable cause that can only be overcome by evidence that the indictment "was the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith." *Green v. Montgomery*, 219 F.3d 52, 60 (2d Cir. 2000) (quoting *Marshall v. Sullivan*, 105 F.3d 47, 54 (2d Cir. 1996)); *accord Gisondi v. Town of Harrison*, 532 N.Y.S.2d 234, 236 (1988). Bermudez argues that the indictment was the product of police suppression of evidence, because Defendant officers failed to disclose the evidentiary problems to ADA Rodriguez.

We need not decide this issue, however, because ADA Rodriguez interviewed the two witnesses who testified at the grand jury hearing – Thompson and Velasquez.

Thompson told ADA Rodriguez, and then testified at the grand jury hearing, that he saw Bermudez shoot the victim. Velasquez told ADA Rodriguez, and then testified at the grand jury hearing, that she saw Bermudez reach behind his back for a gun. Even if the ADA had been misled about the overly suggestive photo identification and array procedures and about the alleged coercion of Lopez, these interviews provided ADA Rodriguez with probable cause to prosecute Bermudez. Because we find that probable cause existed to indict Bermudez, we do not reach the other elements of Bermudez's malicious prosecution claim against Defendant officers.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the District Court insofar as it grants summary judgment to Defendants on Plaintiff's malicious prosecution claims, VACATE the judgment of the District Court insofar as it grants summary judgment to Defendants on Plaintiff's due process claims, and REMAND the case for further proceedings consistent with this opinion.