Demosthene v. City of New York

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of October, two thousand twenty.

PRESENT:
> JON O. NEWMAN,
> RICHARD C. WESLEY,
> JOSEPH F. BIANCO,
> > *Circuit Judges.*

_____

Kroutchev Demosthene,

> *Plaintiff-Appellant*,

> v.                                                                         19-3002

City of New York, Dora B. Schriro, Detective John Roberts, P.O.s John and Jane Does 1-10,

> *Defendants-Appellees.*

_____

| | |
|---|---|
| For Plaintiff-Appellant: | UGOCHUKWU UZOH, Ugo Uzoh, P.C., Brooklyn, New York. |
| For Defendants-Appellees: | TAHIRIH M. SADRIEH (Aaron M. Bloom, *on the brief*), *for* James E. Johnson, Corporation Counsel of the City of New York, New York, New York. |

Appeal from a judgment and various orders entered by the United States District Court for the Eastern District of New York, granting summary judgment to defendants on all claims, denying plaintiff's request to amend the complaint, and denying various requests for extensions of time and other relief (Johnson, Jr., *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment and orders of the district court are **AFFIRMED**.

Plaintiff-appellant Kroutchev Demosthene appeals from the judgment and decisions by the district court, granting summary judgment to defendants on all claims, denying his request to amend the complaint to include additional defendants, and denying various requests for extensions of time and other relief. In his complaint, Demosthene asserted claims for violations of his civil rights under 42 U.S.C. § 1983 against the City of New York (the "City"), Commissioner Dora Schriro, Detective John Roberts, and several other employees of the City (collectively, "defendants"), including claims for, among other things, false arrest/imprisonment, malicious prosecution, denial of his due process right to a fair trial, fabrication of evidence, and excessive force. Demosthene also asserted a conspiracy claim under 42 U.S.C. § 1985 and various state law claims. The underlying arrest and prosecution of Demosthene were for robbery of a cell phone at gunpoint, but the charges were ultimately dismissed.

This appeal centers primarily on two rulings by the district court. First, on August 28, 2015, the district court adopted the magistrate judge's Report and Recommendation, dated June 26, 2015 (the "2015 R&R"), granting in part and denying in part Demosthene's motion to amend. Second, on August 16, 2019, the district court adopted the Report and Recommendation, dated July 20, 2018, granting summary judgment to defendants on all federal claims and declining to exercise supplemental jurisdiction over the remaining state law claims. In addition, Demosthene

appeals various other orders issued by the district court relating to these motions, including: (1) the Order, dated August 26, 2015, denying his request for additional time to file objections to the 2015 R&R; (2) the Orders, dated September 9 and 11, 2015, denying his request for reconsideration of the partial denial of his motion to amend and denial of his extension of time to file objections; and (3) the Orders, dated September 19, 2017, denying his requests for reconsideration of the district court's decisions to deny a further extension of the discovery deadline and to allow defendants to move forward on their summary judgment motion.

We assume the parties' familiarity with the underlying facts and procedural history, which we reference only as necessary to explain our decision to affirm. We will address the summary judgment decision first and then analyze the various challenges to the other orders issued by the district court.

## I.    Summary Judgment

This Court reviews a grant of summary judgment *de novo*. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### A.  False Arrest and Malicious Prosecution Claims

Demosthene argues that the district court erred in concluding that there was probable cause for his arrest and prosecution, and that his false arrest and malicious prosecution claims should have survived summary judgment. We disagree.

Probable cause is a complete defense to a cause of action for false arrest or imprisonment,

as well as malicious prosecution. *Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999) (false arrest); *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (malicious prosecution). Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (internal quotation marks omitted). Probable cause does not require "hard certainties" but instead "requires only facts establishing the kind of fair probability on which a reasonable and prudent person, as opposed to a legal technician, would rely." *Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) (internal quotation marks and alteration omitted). Moreover, "[w]hen information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (citations omitted). "[W]here there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court." *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007).

Here, the uncontroverted evidence in the record taken together supports a finding of probable cause as a matter of law. New York Police Department ("NYPD") Detective John Roberts[1] relied upon three pieces of evidence to support his probable cause determination at the time of Demosthene's arrest. First, the telephone number ending in 3565 that was provided by the robber to the victim in arranging the sale of the cell phone was linked to an account associated with Demosthene's date of birth and address.[2] Although Demosthene attempts to provide

---

[1] The only named defendants in the complaint are Detective Roberts, Commissioner Schriro, and the City. Therefore, the probable cause analysis is based upon the information available to Detective Roberts, rather than other unnamed officers.

[2] There was no real name associated with the number; instead, the name for this account was what appeared to be an alias.

4

alternative innocent explanations for the incriminating telephone record evidence, any such attempts do not vitiate the probable cause that otherwise existed for the arrest. *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("[T]he fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause." (internal quotation marks omitted)). Second, Demosthene fit the general physical description that one of the victims provided to the NYPD immediately after the robbery took place. In particular, the victim described the perpetrator as a Black man, between the ages of 20 to 25 years old, and about 5'10'' tall. Demosthene, at the time, was 21 years old, 6' tall, and is a Black man. Third, the victim selected a photo of Demosthene from a photo array as the individual who robbed him. Although Detective Roberts did not participate in the investigation into the robbery himself, his NYPD colleagues informed him of all these facts. This information was "sufficient to warrant a person of reasonable caution" to believe that Demosthene had committed the robbery. *See Singer*, 63 F.3d at 119 (internal quotation marks omitted); *see also Harrison v. County of Nassau*, 804 F. App'x 24, 27 (2d Cir. 2020) (concluding that photo array identification supported probable cause).

Demosthene argues that there was sufficient evidence of fabrication of the photo array identification to undermine the probable cause determination and preclude summary judgment. We find that argument unpersuasive. Detective Roberts stated that he "was informed by Detective Gary Haber that the complaining victim identified plaintiff in the photo array as having committed the gun point robbery," Joint App'x at 572, which was corroborated by a contemporaneous document of a re-interview of the victim by Detective Haber on February 29, 2012, noting such identification. Moreover, there is no evidence that Detective Roberts would have any reason to believe that Detective Haber would fabricate the identification. *See Martinez v. Simonetti*, 202 F.3d 625, 635 (2d Cir. 2000) (noting that absent a reason to question his veracity, an officer may

5

rely on a fellow officer's account to establish probable cause).

Notwithstanding this evidence, Demosthene suggests that purported deficiencies in the paperwork suggest that Detective Haber fabricated the identification. These conclusory and speculative assertions of fabrication are insufficient to create a genuine issue of fact with respect to the fabrication of evidence. *See, e.g.*, *Cameron v. Cmty. Aid for Retarded Children, Inc.*, 335 F.3d 60, 66 (2d Cir. 2003) ("[A]n inference that [the defendant] fabricated complaints would be based on nothing but speculation, lacking in the concrete particulars required to defeat summary judgment." (internal quotation marks omitted)); *see also Crawford v. City of New York*, 477 F. App'x 777, 780 (2d Cir. 2012) ("[The plaintiff] offers nothing beyond speculation to suggest that [the Detective] fabricated a story. Conclusory allegations are insufficient to withstand summary judgment."). To the extent that Demosthene contends that he could have uncovered such evidence of fabrication with additional discovery, the declaration submitted in opposition to the motion for summary judgment did not comply with Rule 56(d) of the Federal Rules of Civil Procedure, in that it failed to state "the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994) (discussing the prior and materially identical version of Rule 56(d)). In light of that failure, the district court did not err in considering the summary judgment motion based upon the record before it. *See id.* at 1137–38.

In short, based upon the victim's identification and other corroborating information, no rational jury could find that there was a lack of probable cause for Detective Roberts to arrest Demosthene for the robbery. Similarly, with respect to the malicious prosecution claim, there is no evidence in the record that Detective Roberts became aware of information after the arrest that

6

would overcome the presumption of probable cause that attaches to the grand jury's indictment. *See Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (explaining that presumption of probable cause from an indictment "can only be overcome by evidence that the indictment was the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith" (internal quotation marks omitted)). Accordingly, we affirm the district court's dismissal of the false arrest and malicious prosecution claims.[3]

## B. Excessive Force Claims

Demosthene's excessive force claims focus on two incidents – namely, (1) when an unidentified officer allegedly punched him twice while he was transported to the NYPD precinct on April 9, 2012 following his arrest, and (2) when an unidentified officer allegedly choked him while he was participating in an October 2012 line-up. Demosthene argues that, although he could not identify either officer allegedly involved in these attacks, a rational jury could conclude that Detective Roberts participated in the assaults, or, at the very least, failed to intervene. We find Demosthene's arguments unpersuasive.

With regard to the alleged April 2012 punching incident in the police vehicle following Demosthene's arrest, he testified that there were two officers in the vehicle, but he was unable to identify the officer who allegedly punched him. Instead, Demosthene only testified that it was the unidentified officer in the passenger seat who punched him. Although Detective Roberts was in the police car at the time Demosthene alleges he was punched, there is nothing in the record from which a rational jury could reasonably infer that it was Detective Roberts who punched

---

[3] Given the absence of evidence from which a rational jury could find fabrication of evidence by the police in this case, we also affirm the district court's dismissal of the fabrication of evidence and due process claims. Moreover, in light of the absence of an underlying constitutional violation, the district court correctly dismissed the claim against the City pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978) and the conspiracy claim under § 1985. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *Spencer v. Casavilla*, 903 F.2d 171, 174 (2d Cir. 1990).

Demosthene, rather than the other police officer in the car. Any such finding by the jury based upon this scant record would be sheer speculation.

Demosthene attempts to overcome this evidentiary gap by arguing that, at a minimum, Detective Roberts could be liable under a failure-to-intervene theory even if he was the driver of the police car while the other officer punched him. That argument, however, is similarly flawed. A police officer has an affirmative duty to intercede when excessive force is being used by other officers if there is "a realistic opportunity to intervene to prevent the harm from occurring." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). Here, Demosthene testified in his deposition that, when he kept questioning why he was being arrested and where they were going, the officer in the passenger seat "turned around with his right [hand] and struck [him] two times." Joint App'x at 645. Based upon Demosthene's own testimony regarding the brief nature of the alleged incident, no rational jury could find that the driver of the police car would have had a reasonable opportunity to intervene while driving and prevent the alleged throwing of two punches by the other officer. *See O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (holding that no rational juror could conclude that the defendant had an opportunity to intercede when "blows were struck in such rapid succession").

With respect to the October 2012 line-up, both Detective Roberts's affidavit and a record of the line-up demonstrate that Detective Roberts was not present when the line-up was conducted. Demosthene offers no evidence to the contrary. In fact, Demosthene himself testified that the officer who allegedly choked him was Black, and Detective Roberts is Caucasian. It is axiomatic that claims under § 1983 for use of excessive force or failure to intervene require personal involvement to trigger liability. *See Patterson v. County of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004). Due to this lack of evidence regarding Detective Roberts's personal involvement in the

alleged excessive use of force at the time of the line-up, the district court also properly dismissed this portion of Demosthene's excessive force and failure to intervene claims.

## II.    Other Rulings by the District Court

Demosthene also argues the district court erred in addressing a number of his motions, including: (1) denying his request to further extend the discovery deadline before allowing defendants to file their summary judgment motion; (2) denying his request for an additional extension of time to file objections to the 2015 R&R regarding his motion to amend, and then failing to consider the late objections; (3) denying, in part, his motion to amend; and (4) denying his motions for reconsideration related to these rulings.

We review each of these decisions for abuse of discretion. *See, e.g.*, *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 102 (2d Cir. 2008) (discovery rulings); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988) (denial of motion to extend time to file objections to a report and recommendation); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) (denial of leave to amend); *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (motion for reconsideration). "A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (internal quotation marks, citations, and alterations omitted).

With respect to the discovery deadline, Demosthene received numerous extensions of that deadline over a two-year period, and still failed to complete such discovery. Similarly, Demosthene received a 14-day extension of time to file his objections to the 2015 R&R but, when the district court failed to grant his additional extension requests, chose to file his objections one week after the deadline. The district court's decision not to grant these requests for further

9

extensions of time was well within the range of permissible decisions and did not constitute an abuse of discretion under these circumstances. Moreover, given that Demosthene did not object in a timely fashion to the 2015 R&R (after receiving notice that the failure to do so would constitute waiver), he waives further judicial review of the findings contained in the 2015 R&R.[4] *See Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992). We recognize that, because this waiver rule is non-jurisdictional, we "may excuse the default in the interests of justice." *Thomas v. Arn*, 474 U.S. 140, 155 (1985). That standard, however, has not been met here because Demosthene has failed to demonstrate that the proposed amendments for which he was denied leave raised plausible claims against the additional defendants. Finally, to the extent that Demosthene also challenges the district court's denial of his various motions for reconsideration with respect to these various rulings, we similarly conclude that the district court did not abuse its discretion in denying such motions.

\* \* \*

We have reviewed the remainder of Demosthene's arguments and conclude that they are without merit. For the foregoing reasons, the judgment and orders of the district court are **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[4] On June 26, 2015, the magistrate judge issued a report and recommendation, which recommended that Demosthene's motion to amend the complaint be granted in part and denied in part. The end of the 2015 R&R stated that written objections must be filed within fourteen days of service of the 2015 R&R and that failure to file objections within that time *waives the right to appeal*. Despite receiving an extension of that deadline to July 24, 2015, Demosthene failed to file objections by the deadline. The district court then adopted the 2015 R&R in its entirety. The district court ordered Demosthene to file an amended complaint complying with its ruling within ten days, but Demosthene never did.

10